27799. GAZAWAY *et al.* v. NICHOLSON *et al.*

4

*R. Carter Pittman, Jack B. Ray,* for plaintiffs in error.

*W. E. & W. G. Mann, D. W. Mitchell, Silas Williams,* contra.

SUTTON, J. Robert Nicholson, a minor eight years of age, by his father, J. R. Nicholson, as next friend, brought suit against Milton Gazaway, Noah Johnson, Allyn & Bacon Book Publishing Company, and Farrar W. Bond, to recover damages on account of alleged joint and concurrent negligence of the defendants. In the petition it was alleged as follows: Before and on September 14, 1937, Milton Gazaway owned and operated a bus for the purpose of transporting school children to and from Valley Point Consolidated School in Whitfield County. On September 14, 1937, Noah Johnson was operating and driving this bus at the instance and under the direction of Milton Gazaway, for the purpose for which it was maintained and operated, and was the agent and chauffeur of Gazaway on the date and the occasion of injuring the plaintiff; and all of the acts of negligence by Johnson are charged as acts of negligence of Gazaway. Before and on September 14, 1937, Bond was the agent and alter ego of Allyn & Bacon Book Publishing Company, as traveling representative and within the scope of his authority representing that company, and all of the acts of negligence by Bond are charged as acts of negligence against the company. On September 14, 1937, the plaintiff had attended the school, and had ridden south in the school bus of Gazaway, operated by Johnson, agent, chauffeur, and driver of Gazaway under his direction, and under the duty to transport school children safely from and to their homes and the school. About 1:30 o'clock p. m., the driver stopped the bus, not at the Carbondale road just south of the plaintiff's home, as was customary and safest, so that the plaintiff would not have to cross the Dixie highway at a point ten miles south of Dalton in said county, but on the left or east side of the said Dixie highway for the purpose of unloading school children, among whom was the plaintiff; and in order for him to get to the home of his father on the west side of the said highway

it was necessary for the plaintiff to cross the highway, all of which was well known to the driver of the school bus, who, without accompanying the children, including the plaintiff, so alighting from said bus, allowed them to alight on the road in the most thickly and constantly traveled public highway in the county. The plaintiff alighted from the bus, and others were alighting therefrom, and plaintiff was attempting to cross the highway, and had passed the center of the highway going to his home on the west side thereof, and was on the west side of the center line of the highway at a point just opposite the home of his father and just south of the intersecting Carbondale road, and at which time the automobile of the defendant publishing company, operated by Bond within the scope of his employment and about the business of his employer, headed north on said highway, crossed the intersecting Carbondale road at a speed of fifty miles and more per hour, and passed said school bus so unloading school children, at said rate of speed, and Bond drove on the left side of the center line of the highway, on the side, and ran said automobile over the body of plaintiff, inflicting upon him certain described severe, painful, and permanent injuries. The said bus driver remained in his seat, which was high above the road and which gave him a clear vision of automobiles approaching from the south; and while said bus was so parked on the left side of the road, discharging school children, including the plaintiff, in violation of the laws of this State, he saw the approaching automobile driven by Bond, and discharged said school children, including the plaintiff, in said highway into the path of the oncoming car of Bond.

Further allegations: The operator of the school bus, being a carrier of passengers for hire, owed to the plaintiff the duty of extraordinary care and diligence in putting him off in a safe place, and was guilty of negligence per se in discharging plaintiff on the left side of the road and highway, and was negligent and careless in discharging him into said thickly traveled highway and into the path of the oncoming automobile operated by Bond. At the time of the inflicting of said injuries the plaintiff was free from fault, and his injuries were caused solely, directly, and proximately by the joint trespasses and torts of said joint tort-feasors, defendants. The said defendants were joint trespassers and joint tort-feasors and were negligent and care-

less, as follows: (a) Gazaway was negligent and wanting in ordinary care in permitting Johnson, an unskilled driver, to operate and drive said school bus filled with small school children. (b) Gazaway and his agent Johnson were negligent and wanting in ordinary care in stopping said school bus on the left side of the Dixie highway, a populously traveled highway, on the left side of the road and and just north of an intersecting highway, the Carbondale public road, and unloading small school children, including plaintiff, in said highway without assisting them in getting off of the school bus into a safe place. (c) Said driver of the school bus was negligent in remaining in the bus while letting small school children, including plaintiff, alight into the public highway from the bus. (d) In not stopping said bus and discharging the school children at a safe point where plaintiff could get to his home without alighting into said populously traveled highway. All of said acts and failures to act, on the part of Johnson and Gazaway, contributed to and constituted joint acts of trespass and joint tortfeasors, which, together with the joint trespasses and joint torts of the joint tort-feasors Allyn & Bacon Book Publishing Company and Bond, contributed to and brought about the injury and damage to plaintiff. The joint trespasses and joint acts of negligence and carelessness on the part of Allyn & Bacon Book Publishing Company and Bond, contributing to said injuries, all of which directly and proximately brought about said damage, were as follows: Allyn & Bacon Book Publishing Company and Bond were negligent and careless, (a) in operating said car at the excessive rate of speed of fifty miles per hour and more, across an intersecting public road which crosses a thickly traveled State road, the Dixie highway; (b) in operating said car by a school bus unloading school children, and in ignoring the word "Stop" in large letters thereon; (c) in operating said car the driver passed the bus without having the car under immediate control; (d) in operating the car on the left side of the center of the highway; (e) in not stopping said car before striking and injuring plaintiff; (f) the driver was negligent per se in passing said bus while it was discharging the school children; all of said acts and failures to act on the part of the defendants constituting joint trespasses and joint torts on plaintiff and bringing about his injuries and damage.

Gazaway and Johnson demurred on the ground that no cause

of action was set forth against. them. The demurrer was over-ruled, and they excepted. They answered, denying the material allegations, and especially pleaded that the bus did not stop on the highway, but was driven to the left thereof and on the grounds of a near-by filling-station at a distance of four feet from the highway; that the child had safely alighted, and the relation of passenger and carrier had terminated before he was injured on the highway; and that his injuries were due solely to the negligence of the driver of the automobile which struck him.

As shown in *Allyn & Bacon Book Publishers* v. *Nicholson*, 58 *Ga. App.* 729 (199 S. E. 771), the publishing company, and Bond, the driver of the automobile, filed a general demurrer, which was overruled, and on writ of error this court held that the petition set out a cause of action against them. Thereafter on the trial the jury returned a verdict against all four defendants. Gazaway and Johnson filed a motion for new trial, which was overruled, and they excepted to that judgment and to the overruling of their demurrer.

■ The petition charged negligence against Gazaway and Johnson in bringing the bus to a stop on the left side of the highway, in violation of the Code, § 68-311, which provides, among other things, that "such school-bus drivers shall stop said school busses on the right-hand side of the road or street as close to the curb or edge of said road or street as is practicable," and in discharging the plaintiff upon the highway itself, and charged concurrent negligence against the publishing company and its employee Bond, as set out in the foregoing statement. As was said in *Allyn & Bacon Book Publishers* v. *Nicholson,* supra, with citations, "The proximate cause of an injury may be two separate and distinct acts of negligence acting concurrently. in causing the injury." Under the allegations of the petition the acts of negligence of the defendants concurred in proximately causing the injury to the plaintiff. The court did not. err in overruling the general demurrer of Gazaway and Johnson.

■ The jury was authorized to find from the evidence the following facts: Gazaway, under a contract with the board of education of Whitfield County, was engaged in transporting school children to and from the Valley Point Consolidated School in that county. Among the children so transported by his bus was the

plaintiff, a boy of about seven years of age. It was customary for certain children, including the plaintiff, to assemble at a filling-station for transportation to school in the morning. This filling-station was diagonally across from the plaintiff's home, and on the opposite or east side of the Dixie highway as one proceeds south from the school. A short distance below the home of plaintiff and the filling-station, and on the west or right side of the highway, on the opposite side from the filling-station, the unpaved Carbondale road, sufficient to accommodate the bus and allow another vehicle to pass it, leads from the paved Dixie highway in a north-westerly direction. At a point just after this road leaves the highway at a sharp angle a small dirt road leaves the Carbondale road and passes in front of the home of plaintiff, and then joins the Dixie highway a short distance north. Usually Gazaway, in bringing the children from school, drove the bus into the Carbondale road, where the plaintiff alighted and proceeded to his home without the necessity of crossing the paved Dixie highway, although under such circumstances, where other children living on the opposite side of the highway alighted, it became necessary that they cross the highway to reach their homes. On the day when the plaintiff was injured, and on the previous day, Gazaway did not drive the bus, but instead Johnson, acting as his agent and under his directions, drove the bus to and from the school. On each of the two days children, including the plaintiff, entered the bus on the grounds of the filling-station and alighted therefrom on their return. Johnson in times past had driven the bus into the Carbondale road and discharged certain of the children. He knew the places where the bus stopped, but did not know where the children lived. On the day of the injury he drove the bus diagonally from the highway onto the grounds of the filling-station, stopping it so that the right rear wheel was about three feet from the pavement and the front right wheel about four feet from the pavement. He did not direct any one to alight, but, after a truck had passed, opened the bus door, which was on the right side near the front, and permitted several children to leave the bus, at the same time cautioning them to be careful. Three or four children preceded the plaintiff, and alighted without mishap. The plaintiff, unseen or unobserved by the driver of the bus, hurriedly alighted, took two or three steps on the gravel of the filling-station grounds and a

few steps on the highway, he testifying that he hit the pavement "on the run." As he arrived just beyond the center of the highway, intending to continue on across diagonally and take a small path on the opposite side leading to his home, he was struck by an automobile driven by Bond, employee of the publishing company and, by its admission, acting in the scope of his employment at the time. He was driving the car negligently at sixty to seventy miles per hour, as the jury was authorized to find; and the automobile, in striking the plaintiff, severely injured him. The driver of the bus testified that he did not observe the approach of the automobile as he was permitting the children to alight, and that he noticed it only after the plaintiff had reached the highway. One witness, a young man who was sitting next to the bus driver, testified that Bond's automobile was not in sight until after the bus door had been opened. While it was not shown that the bus driver knew that the plaintiff lived on the other side of the highway, he testified that he was aware that there was a stop just within Carbondale road, and that, while he did not know where the children lived, he realized that some of them might have to cross the highway, which he knew to be a "largely traveled highway," and for that reason he cautioned them to be careful as he opened the door.

It thus appears that the bus was not stopped on the left side of the highway in the sense that any part of it rested on the highway itself, but that it stopped on the grounds of the filling-station a short distance from the pavement, and that the children were not deposited, as alleged in the petition, on the highway proper, but adjacent thereto. In these circumstances the provisions of the Code, § 68-311, that school-bus drivers shall stop school buses on the right side of the road or street as close to the curb or edge of the road or street as is practicable, and of the act of 1935 (Ga. L. 1935, p. 443), that a motor vehicle shall not be parked on or along any State-aid road or highway unless so placed that it is at least eight feet from the center line thereof, and no portion of the vehicle shall be within eight feet of the center thereof, can have no application to the facts of the present case, inasmuch as it is shown that the bus was not stopped on any part of the highway. The question becomes: was the jury authorized to find under the law and the evidence that in parking the bus in the manner described, and in allowing the plaintiff to alight under the circumstances named,

the driver of the bus was guilty of negligence which concurred with the negligence of the driver of the automobile in proximately causing the plaintiff's injury and damage? "While a carrier of passengers is not an insurer of the safety of his passengers in the sense that a common carrier of goods is said to be an insurer of the safety of goods carried, he is bound to exercise extraordinary care and diligence for the safety of his passengers, and it matters not the kind of conveyance used or the nature of the motive power employed. Hence the operator for hire of a school motor-bus who operates along a certain route every school day in taking all school children alike to and from a certain school is a carrier of passengers in so far as such school children are concerned, and is required to exercise extraordinary care and diligence for the safety of any one of such school children riding in his bus." *Sheffield* v. *Lovering,* 51 *Ga. App.* 353 (180 S. E. 523). It is, of course, the duty of a bus driver to discharge a passenger at a place of safety; and where a carrier deposits him at a place which it knows will reasonably expose him to unusual and unnecessary peril, it may be held liable for a proximately resulting injury. *Locke* v. *Ford,* 54 *Ga. App.* 322 (3) (187 S. E. 715), and cit. A carrier is not, however, responsible for any peril incurred after the passenger has been deposited in a place of safety. *Macon Railway & Light Co.* v. *Vining,* 120 *Ga.* 511, 513 (48 S. E. 232) ; *Augusta Ry. Co.* v. *Glover,* 92 *Ga.* 132 (10) (18 S. E. 406) ; *Martin* v. *Georgia Power Co.,* 45 *Ga. App.* 799 (165 S. E. 880). Did the bus driver in the present instance, being able to operate and steer the bus to any place of his choice as a place of safety, exercise the care required of him by the law? The passenger in question was a boy about seven years of age; and even if it could be said that the place where he was deposited was safe for an adult, it does not necessarily follow that it was safe for a young child. Cases involving an adult, which might be cited as showing that Gazaway and Johnson, the driver, are not liable are not determinative of the present issue, unless it could be said that a place of safety is one wherein a person would come to no harm if he remained in it, and that it must not be measured by any consideration of competence or ability of one deposited in a given place to emerge therefrom without subjecting himself to hazards of the environs. If Smith takes the arm of Jones and leads him to the curb of a street, but on the sidewalk,

although a street-car may be passing in the street, it might reasonably be asserted that Jones, an adult, was in a place of safety. But if one leaves a young child at the same spot, and in its immaturity it wanders into the street and is run over and injured by the street-car, could it then be reasonably said that the child had been put in a place of safety?

These considerations impel us to the conclusion that it would be too narrow a construction to say that the safety of a place must be determined solely by whether or not one would be safe if he remained in it. We find no exactly parallel case in the reports of this State and few decisions in other jurisdictions which are of aid. Two of the latter may be noticed. In Roden v. Connecticut Co., 113 Conn. 408 (155 Atl. 721), the plaintiff was a boy of seven years of age, and at the end of the run of the bus was discharged on the side of the street opposite that where his home was located. The operator stopped the bus in such a way that a part of it was on the shoulder of the road. Passengers could pass out only from the right side of the bus. In descending the steps to the roadway he was struck by a passing motor truck; and it was held that the driver had not exercised the proper care towards him. Of course, in the present case the bus was driven completely away from the roadway; but the duty of the carrier, as announced in the Roden case, is worthy of quotation. It was said: "The duty of a common carrier of passengers includes an obligation to furnish them a safe place in which to alight, as far as that place is provided by it or is affected or conditioned by the movement of the vehicle, and that duty is only satisfied if it exercises the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities employed and the dangers naturally to be apprehended. . . An automobile bus is able to move or stop in the street at the will of its driver, and the safety of the place he offers its passengers to alight may be affected or conditioned by the passing traffic. . . The care to be exercised toward a young child traveling by himself must be proportioned to the degree of danger inherent in his youth and inexperience." In Taylor v. Patterson's admr., 272 Ky. 415 (114 S. W. 2d, 488), the driver discharged a seven-year-old boy on the side of a street necessitating his crossing a very busy street to reach his home, and he was injured by a pass-

ing truck. In the opinion it was said: "If Patterson [the plaintiff's intestate] had been an adult of mature years and in possession of the faculties of a normal adult, the court would have no trouble in reaching a conclusion quickly as to the liability of Taylor [the jitney-bus operator]; but we have here a child passenger to deal with, under seven years of age, just returning from school, full of life, with great anxiety, no doubt, as is usual in a child of that age, to reach his home and mother quickly, possibly his childish appetite was gnawing heavily, and his thoughts only upon things of that character, and not upon the obvious surroundings that were obvious to an adult, and possessing at that age but little discretion or judgment or ability to perceive surroundings or situations that would produce injury or death, should he undertake to cross the street. This condition of the child passenger was known to Taylor, as was also the heavily traveled street, and the danger in crossing same to reach the home of the decedent was necessarily obvious and plain to be seen by appellant. Such a state of facts as that differentiates this case from the situation of an adult passenger. . . Under the proof Taylor failed to discharge Patterson, a boy of his age, at a place of safety, *even if the sidewalk where he was discharged was safe had the boy remained there.* A 'place of safety,' as contemplated by the courts in considering such a phrase, is such a place as the passenger may use and occupy with relation to the place of destination fixed under the contract of carriage; and in discharging the boy on the side of the street opposite his home, *although he would have been safe if he had remained there,* the appellant did not select a safe place to discharge him, as he was required to take into consideration the location of the place of destination, his home, the age of the boy, and the known hazards to be encountered in crossing the street to the boy's home, the place of destination." (Italics ours.)

In the present case should the driver, knowing the dangers incident to the passing of automobiles on the highway, have ascertained the location of the plaintiff's home and have driven his bus on the other side of the highway, so that the young boy could have alighted where he would not have to hazard the highway? Was the place where he was in fact allowed to alight a place of safety for one of his years? Was the driver under the circumstances of the case negligent? If so, his employer Gazaway was also liable for

his negligence. These questions were all for the determination of the jury, and under the evidence we think that they were authorized to find that the driver of the bus was negligent, and that his negligence concurred with that of the driver of the automobile in proximately causing the injury and damage to the plaintiff. Consequently it follows that the court did not err in overruling the general grounds of the motion for new trial.

The first special ground complains that, after instructing the jury as to comparative negligence and that the plaintiff could not recover if his negligence was equal to that of the defendants, the court erred in charging the jury in effect that if they found the defendants liable they would not be authorized to return a verdict for different amounts against the respective defendants, concerning which the jury had requested a charge, although they found that the negligence of one was greater than that of another, but should return a verdict in one amount against all defendants; it being contended that it was confusing and misleading to the jury so to charge, and was in conflict with the charge as to comparative negligence, was unsound as an abstract principle of law, and was erroneous and injurious, because under the facts the jury would have been authorized, if authorized to find any sum whatever against the defendants, to have assessed a very small sum against the movants while fixing a large sum against the other defendants; and further, that it was in conflict with and in derogation of the comparative-negligence rule in this State and the provisions of the Code, §§ 94-703, 105-603, 105-2011. The contention as to prorating the amount of damages has been decided adversely to plaintiff in error, in *McCalla* v. *Shaw, 72 Ga.* 458, *Hunter* v. *Wakefield, 97 Ga.* 543 (25 S. E. 347, 54 Am. St. R. 438), *Hay* v. *Collins,* 118 *Ga.* 243 (44 S. E. 1002), *Cox* v. *Strickland, 120 Ga.* 104 (47 S. E. 912; 1 Ann. Cas. 870), *Glore* v. *Akin,* 131 *Ga.* 481 (62 S. E. 580), and *Lee* v. *Central of Georgia Railway Co.,* 147 *Ga.* 428 (94 S. E. 558, 13 A. L. R. 156), in which it was ruled that the provision of law contained in the Code, § 105-2011, that "Where several trespassers are sued jointly, the plaintiff may recover, against all, damages for the greatest injury done by either. The jury may, in their verdict, specify the particular damages to be recovered of each, and judgment in such case must be entered severally," has no application to a tort action for personal injuries, in so far as pro-

rating the damage is concerned. This ground is without merit for any reason assigned.

The second special ground complains that the court erred in failing, without request, to charge that before the jury would be authorized to return a verdict against the movants they must find from the evidence that they were not only negligent but that their negligence was the preponderating cause of the plaintiff's injury; it being contended that the evidence showed that the chief preponderating cause of the plaintiff's injury was the negligence of the driver of the automobile. The court did not err as contended, inasmuch as "It is well settled that an action may be maintained against two joint tort-feasors whose negligence *contributes* to produce an injury, even though the same obligations do not rest upon each with respect to the person injured. It is sufficient to support a recovery if the negligence of both be a *contributing* cause, even though one owes to the person injured a higher degree of care, and even though there be *differing degrees of negligence by each.*" (Italics ours.) *Gooch* v. *Georgia Marble Co.,* 151 *Ga.* 462, 464 (107 S. E. 47). The charge of the court, "Now, I charge you that if the defendants were negligent in some one or more or in all the respects and particulars named in the plaintiff's petition, and if you should believe that as a result of such negligence the plaintiff was injured, if you believe the plaintiff was injured, and you believe the plaintiff was not guilty of such negligence as under these instructions would bar a recovery, then I charge you that the plaintiff would be entitled to recover," was not error for the assigned reason in the third special ground, that it authorized the jury to find against the movants on one or more acts of negligence charged against their codefendants, although the jury may have found that the movants were not guilty of any act of negligence contributing to the plaintiff's injury, inasmuch as the court charged, in immediate connection, that there could be no recovery against the movants unless they were negligent, and it could not reasonably be said that the jury conceived the impression suggested by the ground of the motion.        *Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., dissenting. I do not think the school-bus driver was guilty of negligence in this case. The majority opinion in effect holds that the duty of the driver was to deposit the child on the same side of the road as his home, which I think is unrea-

sonable, as is indicated by the statute which provides that the bus stop on the right side of the highway. If the child had waited until the bus had gone before he attempted to cross the road, the situation would be the same. If the driver can be charged with anticipating that the child would carelessly cross the highway immediately upon alighting, he can also be charged with anticipating that he would do so after the bus had departed. In this case the driver stopped on the side of the highway, and off of it. In so doing he made it necessary for only one child to cross the highway at that point instead of several, which would have been the case had he stopped on the right side of the highway. Our law requires that the children be deposited in a place of safety. This requirement was fulfilled in this case, and it can not reasonably be said that the nature of the place was changed by subsequent conduct of an injured party. The bus driver, by taking the boy in his arms and seating him within the filling-station and cautioning him about crossing the highway, would, under the reasoning in the majority opinion, still be negligent if the boy was later injured crossing the road, because he should have anticipated that the child would carelessly cross the road. If the law requires the driver to deposit every child on the same side of the highway as his home, I am wrong in my view. I do not think it is required. If it is, it is not being done.