HUDAK, APPELLEE, *v.* PENN-OHIO COACH LINES CO., APPELLANT.

(No. 2832—Decided March 23, 1943.)

*Mr. David C. Haynes* and *Mr. Theodore T. Macejko,* for appellee.

*Messrs. Harrington, Huxley & Smith,* for appellant.

CARTER, P. J.   The action below was one for damages for personal injuries claimed to have been sustained by Pauline Hudak, a minor, due to the negligence of defendant company.

The cause came on for trial to the court and jury, resulting in a verdict for plaintiff.   Motions for new trial and for judgment notwithstanding the verdict were overruled by the trial court and judgment was entered on the verdict.   Appeal is prosecuted to this court.

The facts as disclosed by the record are substantially as follows:

Pauline Hudak boarded a bus traveling in a southerly direction on and over a certain street in the city of Girard, known as Davis street. Amhurst street runs in an easterly and westerly direction intersecting Davis street. At the northwest corner of this intersection is a bus stop where passengers alight and others board the bus. On the day in question the bus upon which plaintiff was riding came to a stop just north of the street intersection and over close to the west curb of Davis street. At this point plaintiff left the bus and, while other passengers were alighting and others boarding the bus, she proceeded to cross the street to the east side thereof, in front of the standing bus. Another bus belonging to and operated at the same time by defendant company, which had been following the bus on which plaintiff was riding, proceeded to pass the standing bus and, in so doing, a collision occurred between the bus and plaintiff, in which she was quite seriously injured.

There is testimony pro and con that an automobile was at the time standing on the east side of the street approximately opposite the standing bus. Davis street is approximately 30 feet wide. The testimony varies, as to the speed at which the bus traveling south was moving at the time of the accident, from 25 to 40 miles per hour. Another bus owned and operated by defendant company was proceeding northerly on Davis street and had not at the time of the accident reached the intersection, but was in that vicinity.

Now it is the claim of plaintiff that defendant was negligent in the following respects: In operating its bus at the time and place of the accident at 40 miles per hour; in failing to give warning of the approach of its bus; in failing to keep a proper lookout; in failing to warn plaintiff, while she was still a passenger, of the approach, speed and position of the second bus;

in operating the second bus to the right and striking plaintiff; and in failing to stop when the driver noticed plaintiff directly in front of the bus, it being the claim of plaintiff that a dangerous situation was created by the bus company.

The defendant admits its corporate existence under the laws of Ohio, the minority of the plaintiff, the bringing of the action by her mother as her next friend, the business of defendant, the existence of Davis street and Amhurst street as intersecting duly dedicated streets in the city of Girard, the first of which extends generally northerly and southerly, the happening of the accident at or near the intersection of these two streets on the fourteenth day of October, 1940, and certain injuries of the plaintiff. It then denies each and all of the statements, averments and allegations in plaintiff's amended petition and specifically denies that the accident happened in the manner alleged, and that the plaintiff sustained injuries as alleged. It further denies that it was guilty of any negligence as alleged, and avers that any injuries and damages sustained by plaintiff were proximately caused by her own failure to exercise due care in the situation out of which the accident arose.

As to the claim of defendant that it was not negligent as claimed by plaintiff, the record has been read and a goodly portion reread, and we are of the unanimous conclusion that a jury question was presented on that issue, particularly in the light of the testimony as to the speed of the moving bus at the time of the accident under the circumstances existing at the time.

The reply is a denial of all of the allegations of the answer.

Now it is urged by defendant that the court was in error in the following respects: The verdict of the jury and judgment rendered thereon were contrary

and against the clear and manifest weight of the evidence; the verdict is contrary to law; the damages were excessive; the admission of evidence offered by the plaintiff over the objection of the defendant; the court failed and refused to direct a verdict at the conclusion of the testimony; the general charge to the jury; and the overruling of the motions for new trial and judgment notwithstanding the verdict.

We have already expressed our views that a jury question was presented as to the negligence of the defendant. We are therefore discussing this issue no further.

As to the contributory negligence of the plaintiff, without reciting the evidence bearing on this issue, we have reached the unanimous conclusion that the finding of the jury that plaintiff was guilty of no negligence directly and proximately bringing about her injuries is against the manifest weight of the evidence. However, we are of the view that plaintiff was not guilty of such negligence as a matter of law. Even though plaintiff may have been guilty of negligence there still remains the question of proximate cause, which we think in this case was a jury question. See *Smith* v. *Zone Cabs,* 135 Ohio St., 415, 21 N. E. (2d), 336.

It is urged that the court was in error in charging the jury as to the following allegation of negligence of the defendant:.

"4. In that the operator of the bus in which plaintiff was riding as a passenger failed to exercise the proper degree of care towards her as a passenger, by apprising her of the approach, speed and position in said Davis street and the close proximity, of the second bus, while she was still a passenger and likewise while alighting from the bus as a passenger."

The court on this issue charged as follows:

"Now, we will take this relationship of passenger and carrier first and analyze this rather complicated situation. As long as the plaintiff was a passenger on that bus, which means until she had safely alighted therefrom, this duty of exercising the highest degree of practicable care for her safety was the rule, and that duty, I said to you, existed and was measured by the hazards ordinarily to be encountered and the dangers naturally to be apprehended. Now in this exercise of care, what were the hazards ordinarily to be encountered and the dangers naturally to be apprehended with respect to this girl? It is claimed that as to that duty they didn't perform it in this, that they didn't warn or apprise her of this other bus proceeding in behind and around the bus which she was getting out of. It is not ordinarily the duty of a carrier to warn a person leaving one of its busses at a regular stop of approaching independently operated vehicles in the street. The duty of the carrier to exercise the highest degree of care to afford its passengers a reasonably safe place to alight, extends only to conditions within the carrier's own control and does not apply to independent agencies operating in the street, such as a moving vehicle over which the carrier company has no control, but here we have a claim that this warning ought to have been given because the other vehicle was under the power of the same carrier. That is what makes this situation a little unusual. So you have this duty on that branch of the case, you must inquire with respect to this evidence, did the defendant company by its manner of operating its busses, one passing another which was in the act of discharging passengers, create a sudden dangerous situation in the street to persons getting off one bus and undertaking to cross the street in front of it? Now, where a company which operates busses upon public streets as a common car-

rier, has, by the manner in which it so operates its various busses, created a sudden situation of danger, it then is the duty of such carrier company, before discharging a passenger in such dangerous situation, so by it created, to either remove the dangerous situation or to warn the passenger of its existence.''

The court recognized in his charge the fact that the relationship of the plaintiff to the company as a passenger terminated when plaintiff had alighted safely to the curb. There was at the point where plaintiff alighted no danger and no injury was there suffered. The injury occurred after the relationship of carrier and passenger had terminated, and the defendant, after the termination of such relationship, was required to exercise only ordinary care toward plaintiff commensurate with surrounding circumstances and conditions then and there existing, ordinary care being such care as ordinarily prudent persons would exercise under the same or similar circumstances. We think this is the rule that controls and it was error to charge that, if a dangerous situation was presented at the time, it was the mandatory duty of the driver of the bus on which plaintiff was riding to apprise her before she left the bus that another bus of the defendant was in the immediate vicinity. In 3 Elliott on Railroads (3 Ed.), 506, Section 1649, we think the true rule is found, which is as follows:

''At common law the railway company is under obligation to exercise ordinary care to prevent collisions with travelers on the highway, and by ordinary care is meant such care as a reasonably prudent man would ordinarily exercise under the circumstances. The company is not bound to exercise extraordinary care by using every possible means to prevent injury, but it is bound to use reasonable precautions. It is said that the care and skill, to be reasonable, must be proportioned

to the danger and multiplied chances of injury, and where the surroundings are such as to render a crossing peculiarly dangerous it is the duty of the company to exercise care commensurate with the danger, and especially if the company has created unusual danger at or near a crossing, it must meet such peril with additional precautions.''

We are well aware that that authority is a treatise on railroads. However, railroads are common carriers, and we think this rule applies to the defendant as a common carrier.

No doubt this was one of the controlling principles of law given by the court, which resulted in a verdict in favor of plaintiff as the evidence discloses that no such warning was given by the operator of the bus before plaintiff alighted therefrom. We think the court should have charged the jury on ordinary care and left to the jury the question of whether the defendant exercised ordinary care under the circumstances. We think this charge was prejudicially erroneous.

There is another question presented by a further complaint. That is, as to whether the 25 or 35 mile speed-limit provision applied at the time and place of the accident. The court charged as to the 25 mile limit. We have spent considerable time on this question and make the following observations. At the time of the accident the law provided:

''For the purpose of enforcing the road regulations referred to in this chapter, the main thoroughfare shall be understood to mean all sections of public roads and highways on which are operated street cars, trackless trolleys, other electric cars, or motor coaches for the carriage of passengers for hire along a fixed or regular route under authority granted by the municipal corporation in which the public road or highway lies, provided the municipal corporation in which such

route lies shall erect legible and appropriate signs along the public roads and highways intersecting such main thoroughfares and also all main market and intercounty highways within the state."

This was Section 6310-30, General Code (118 Ohio Laws, 549).

On page 548 of 118 Ohio Laws, we find that Section 7249 (5) of the General Code was amended to read as follows:

"For vehicles equipped with pneumatic tires designed for the transportation of persons, twenty miles an hour when passing a school building or the grounds thereof during school recess and while children are going to or leaving school during the opening or closing hours, twenty miles an hour in the business and closely built up portions of a municipal corporation, twenty-five miles an hour in all other portions of a municipal corporation, except on state routes and on main thoroughfares, thirty-five miles an hour on state routes or main thoroughfares within municipalities outside of business portions, forty-five miles an hour on highways outside of municipal corporations."

It is urged that the pleadings and the evidence cover this question. Plaintiff does allege that Davis street is a duly dedicated street, and is one of the main arteries of travel between the cities of Youngstown and Girard, Ohio, and other points north and south. There is testimony which supports this allegation of plaintiff, being some indication that the street in question was a state route or main thoroughfare. However, due to the fact that this case must be retried, the situation as presented in the case can properly be remedied by establishing the facts necessary to constitute Davis street a part of a state route or main thoroughfare, if such can be established under these sections. There is no necessity of conjecture on this issue. When this

matter was called to the attention of the court at the conclusion of the general charge the court stated that the right to have the 35 mile limitation charged on behalf of defendant had not been established.

The two-issue rule has no application in this case.

As to the verdict being excessive, inasmuch as the case must be retried, we express no views on excessiveness.

For the reasons hereinbefore indicated, the judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*

PHILLIPS and NICHOLS, JJ., concur.