### HOUSTON TRANSIT CO. v. ZIMMERMAN.
#### No. 11854.

Court of Civil Appeals of Texas. Galveston.
Feb. 27, 1947.

Rehearing Denied April 3, 1947.

J. C. Hutcheson, III, J. Curtiss Brown and R. E. Keeton, all of Houston (Baker, Botts, Andrews & Walne, of Houston, of counsel), for appellant.

Allen, Smith & Neal, of Houston (Ira J. Allen and Griffith D. Lambdin, both of Houston, of counsel), for appellee.

CODY, Justice.

This action was brought by plaintiff for himself and wife to recover for the death of their nine year old son, Barney Zimmerman, whose death, plaintiff alleged, resulted from the concurring negligence of a truck driver employed by Lawrence Berry, and a bus driver employed by Houston Transit Company. Said employers were made defendants to plaintiff's action, and Lawrence Berry was made a cross-defendant to a cross-action filed by Houston Transit Company. Though properly before the court in the main action and cross-action, Lawrence Berry made default. Houston Transit Company alone will be referred to as defendant.

As against defendant plaintiff relied upon the following as grounds of recovery: (1) that the bus driver negligently failed to discharge the deceased, who was a passenger on defendant's bus, at a safe place; (2) that the driver, after so discharging the child from the bus, motioned him to cross in front of said bus, into the path of the offending truck. The third ground relied upon was the violation of a city ordinance in stopping the bus more than 18 inches from the curb. We have refrained from ruling on the third ground on this appeal because we dispose of the appeal upon other grounds, and to rule on the third ground, and matters pertaining thereto, would considerably and unnecessarily lengthen this opinion.

The defenses affirmatively relied upon by defendant, and of importance on this appeal, were (1) that the child's acts and omissions after he was discharged from the bus, in passing in front thereof and continuing across the street, was a new and independent cause; (2) that the reckless driving of the offending truck was a new and independent cause.

The court, trying the case with a jury, rendered judgment for plaintiff against defendant and Lawrence Berry, jointly and severally, for $3,300; and for defendant over against Berry for the same sum. Three hundred dollars of the award was based upon the agreement that said sum was the reasonable funeral expenses of the deceased.

The defendant predicates its appeal upon fourteen points. Its points 1 to 4, inclusive, seek a reversal and rendition; while its points 5 to 14, inclusive, complain of procedural matters, which defendant urges require reversal. Points 1 to 4, inclusive, in substance, are:

1. That the evidence was insufficient to raise the issue of negligence on the part of defendant or its bus driver.

2. That the evidence was insufficient to raise the issue of proximate cause against defendant.

3. That the acts and omissions of the offending truck driver were shown by the evidence, as a matter of law, to have been a new and independent cause.

4. That the acts and omissions of the deceased, in leaving the place at which he was discharged from the bus and attempting to continue across the street, were shown by the evidence as a matter of law to be a new and independent cause.

We must overrule the foregoing points.

The defendant seasonably demurred to the sufficiency of plaintiff's evidence to make out a prima facie case, and seasonably urged the sufficiency of its own evidence to compel a verdict for it on the issues of new and independent cause, affirmatively submitted. This defendant did in the form of motions for instructed verdict at the conclusion of plaintiff's evidence, and at the conclusion of all the evidence, and a motion for judgment non obstante veredicto.

The special issues submitted to the jury, with reference to which defendant urges the evidence was insufficient to go to the jury, as answered by the jury, are as follows:

A. The bus driver discharged the deceased at a place which was not reasonably safe. This was negligence and a proximate cause.

B. The bus driver signaled deceased to proceed in front of said bus, and to cross the street. This was negligence and a proximate cause.

The special issues submitted to the jury, with reference to which defendant urges the evidence was sufficient to compel findings and a judgment in its favor, as answered by the jury, are as follows:

C. The deceased did not fail to keep a proper lookout for vehicles traveling east upon the street.

D. The deceased immediately before the accident did attempt to run across the street. This was not negligence.

E. The driver of the offending truck was operating it at a high and dangerous rate of speed. He failed to keep a proper lookout. He failed to have the truck under proper control. He failed to warn the deceased of the approach of the truck. He failed to slow down or stop the truck. None of said acts or omissions were a new and independent cause.

Of course, the direct evidence in support of the findings must be taken as true, and all inferences that can be legitimately drawn therefrom in support of such findings must be taken as valid. The relevant evidence stated, as by law it must be considered, is as follows:

Defendant is a common carrier operating by motor bus in Houston. On September 25, 1943, the deceased, aged nine, accompanied by his sister Jenell, aged eleven, took defendant's bus in downtown Houston to go to the bus stop near San Felipe Courts, where they resided with their parents. When the bus came to the bus stop in question, it was going east. It was stopped even with the bus stop sign, but with its curbside about 8 feet from the south or right-hand curb. It had rained in the afternoon and water was still standing next to the curb, and for a distance out into the street of about 5 feet. About 3 feet was thus left between the bus and the standing water.

The deceased and his sister, who had been riding in the seat immediately behind

the driver, were the first of some six passengers to be discharged, the others being adults. Because of local conditions—a graveyard pre-empted the land fronting on the south of the street—the driver knew that the destinations of his passengers were north, across the street. He did not discharge the passengers on the south curb because the standing water would block, or at least inconvenience, their passage to the north side of the street.

While the other passengers were alighting, Barney and his sister moved forward in the 3 foot space left between the bus and standing water, and on in front of the bus, making room for the other passengers to alight. In front of the bus, Barney and his sister came to a stop, he being nearest to the bus, his sister being to his right, holding his right hand. They could see the bus driver through the windshield. The sister testified: "After I stepped around kind of in front of the bus for a minute I didn't know whether to try to jump the water or go across the street and I looked at the bus driver and he motioned twice for us to go across the street, and so we started." Barney took a half step beyond the bus into the street, and was struck by the truck, which was also going east.

The place where Barney was discharged was upon the pavement, at least 5 feet from the right-hand curb, and blocked therefrom by standing water. The bus would serve as a shield against vehicular traffic until it moved on. But a passenger is due more than safety from injury or danger at the moment of landing. And of course the failure of a bus driver to perform the duty of discharging a passenger into a safe place may be inferred in the case of a nine year old passenger upon easier terms than in the case of an adult. See Gazaway v. Nicholson, 61 Ga.App. 3, 5 S.E.2d 391, where the child was seven years old; Machenheimer v. Falknor, 144 Wash. 27, 255 P. 1031, where the minor was thirteen years old; Shannon v. Central-Gaither Union School District, 133 Cal.App. 124, 23 P.2d 769.

With respect to the duty involved, the Supreme Court of Missouri said, in Gott v. Kansas City Rys. Co., 222 S.W. 827, 830 (after stating the rule that the degree of care required of the carrier for the passenger's safety in leaving its conveyance is as high as that required while he is in transit, and that a part of a carrier's duty, as such, consists in putting passengers off at a reasonably safe place): "The carrier is not absolved from liability, nor from this high degree of care, merely because the passenger is not injured while in the very act of alighting nor at the very spot or moment where and when he alighted * * *, and the carrier is * * * charged with notice of the conditions at and immediately adjacent to the spot where it discharges passengers from its conveyances. If a passenger is put off at an unsafe place and is injured in consequence the negligence of the carrier is considered to be the proximate cause of the injury." Bus carriers "are under the duty to discharge their passengers into a (reasonably) safe place and when so discharged, the relationship is terminated, and if discharged in an unsafe place, the relationship is terminated when the passenger, in the exercise of ordinary care for his own safety, has had a reasonable opportunity to reach a place of safety." Texas, New Mexico Coaches v. Williams, Tex.Civ.App., 191 S.W.2d 66, 68. If passengers, who are children, are discharged at a place not reasonably safe, the law will permit the inference to be drawn that they have not been abandoned to their own devices by the carrier, or if they have been so abandoned, that they were in the exercise of due care for their own safety, upon easier terms than in the case of adult passengers of mature judgment.

The finding by the jury that the place at which the deceased was discharged was not a reasonably safe place is a conclusion that could be legitimately drawn from the evidence. Without further particularizing, we find that the evidence was also sufficient to support the jury's findings designated "B" above; we further find that the evidence was not of the character to compel jury findings favorable to defendant on the special issues designated as "C", "D", and "E" above.

Defendant's fifth and sixth points are closely related, and complain of the court's definition of negligence because it placed on defendant the burden of care due to a passenger from a carrier, whereas, defendant contends (1) that at all relevant times the carrier-passenger relationship between itself and deceased had terminated; or (2) that at all relevant times it was at least a question of fact for the jury whether such relationship had terminated. We must overrule said points.

The definition in question reads: "You are instructed that by the term 'negligence' as that term is applied to the acts or omissions of the Houston Transit Company and its driver, is meant that high degree of care for the safety of its passengers which very cautious and prudent persons would exercise under like circumstances."

The defendant does not question the correctness of the definition when the relationship of carrier and passenger has not been terminated. And we have seen (Texas-New Mexico Coaches v. Williams, supra) that the relationship does not terminate until the carrier has discharged its passenger into a reasonably safe place, or if discharged in an unsafe place, the relationship is terminated when the passenger, in the exercise of ordinary care for his own safety, has had a reasonable opportunity to reach a place of safety. One of plaintiff's claimed grounds of recovery was negligence in that defendant did not perform its carrier duty of discharging Barney into a safe place. Clearly the complained of definition was applicable with respect to the ground of recovery just referred to. That being true, the judgment is supported upon one ground of negligence with respect to which the definition was correct. That is sufficient. West Texas Coaches v. Madi, Tex.Com.App., 26 S.W.2d 199, 202. Whether or not the definition constituted error as applied to the other ground of negligence relied on by plaintiff, and being considered by us, it is not necessary for us to decide.

By its seventh point defendant complains of the court's definition of proximate cause on the ground that it failed to state that the result must be "a natural and prob-

able consequence" of the act or omission. We must overrule the point.

The definition given by the court is as follows: "By the term 'proximate cause' as used in this charge, in its legal significance, is meant a cause which in a natural and continuous sequence, unbroken by any new and independent cause, produce an event, and without which the event would not have happened; and to be a proximate cause of an event it must have been reasonably anticipated 'by a person of ordinary prudence, in the exercise of ordinary care, that the injury or some similar injury would occur. There may be more than one proximate cause of an event."

The defendant fears, groundlessly in our opinion, that under the definition given the jury would understand that a proximate cause was related to reasonably anticipated *possible* consequences, and not merely to reasonably anticipated *probable* consequences. It will be noted that the definition says that by proximate cause "is meant a cause which in a natural and continuous sequence, unbroken by any new and independent cause, produce an event and without which the event would not have happened." The definition as given, in the respect complained of, was more favorable to defendant than was the definition it contends should have been given. See Mercer v. Evans, Tex.Civ.App., 173 S.W.2d 206, 210, writ refused.

Defendant's eighth point repeats, in different form, the complaint presented by its points five and six, and has in effect been ruled on. Defendant's ninth point is submitted by it as being closely related to its eighth point. The ninth point is to the effect that it was error to permit Jenell Zimmerman, Barney's sister, to testify that the bus driver motioned for her and Barney to cross the street, because if such motions were made, they were beyond the scope of the driver's employment. We overrule the point.

The evidence would legitimately support the conclusion that the motion was made to both children, who were holding hands, and that they acted on it. And if, at the time the motion was made, the carrier-passenger relation had not terminated, then,

as a matter of law, the driver was acting in the scope of his employment.

Defendant's tenth point complains of the court's definition of negligence as applied to the acts and omissions of plaintiff, because the definition does not include acts and omissions by plaintiff's wife. Among other reasons for overruling the point is that defendant has no pleading setting up the wife's acts and omissions as contributory negligence.

Defendant's eleventh point relates to the city ordinance requiring vehicles to be stopped 18 inches from the curb; under our ruling the point is not material to the decision of the case.

Defendant's twelfth, thirteenth and fourteenth points relate to special issue No. 29, which in part reads:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate the parents of Barney Gene Zimmerman for the loss of the pecuniary benefits, if any, they would in reasonable probability have received from him had he lived?

"You will answer this question by stating the amount, if any, in dollars and cents."

■■■ Defendant's twelfth point complains that the method of submitting special issue No. 29 assumes that plaintiff will suffer pecuniary loss, which is an issue of fact on which he had the burden of proof. And the defendant contends the court should have submitted a special issue, affirmatively inquiring whether plaintiff would suffer pecuniary loss. To us it is clear from the face of the special issue that it does not assume pecuniary loss as a result of the death of Barney. Charges similar in all material respects have been approved. Gulf C. & S. F. R. Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659, 662, 663. We must overrule the point.

■■■ Defendant's thirteenth point complains of special issue No. 29, because it submits a question as to present cash value of the probable contributions of the deceased to his parents after attainment of majority, there being no evidence of the life expectancy of the minor, nor of that of his parents, nor of the probable contributions of the son after majority. The evidence shows that Barney was a normally healthy boy of nine, and that his parents were each forty-one years old. We overrule the point. See Gulf C. & S. F. R. Co. v. Compton, 75 Tex. 667, 674, 13 S.W. 667.

■■■ Defendant's fourteenth point complains of special issue No. 29, because it did not require the jury to *deduct* from the child's probable earnings the cost of his education and maintenance. In connection with special issue No. 29, the jury were instructed to take into consideration certain enumerated elements of damages, and none other; among which were: "(1) The present cash value, if any, of the probable contributions, if any, by the deceased to the use of his parent, whether in money or services, from the date of his death until he reach his majority. In connection with this element of damages you will take into consideration the probable cost to the parents of the child's maintenance and education, had he lived."

We overrule the fourteenth point. The instruction was not calculated to mislead the jury. Indeed the opinion in Gulf C. & S. F. R. Co. v. Ballew, supra, recommends, in terms, that the jury "be instructed that in determining the amount of the damages it take into consideration the pecuniary value of the son's service, etc., rather than that 'the plaintiffs will be entitled to recover' the pecuniary value, etc." 66 S.W.2d at page 663. Indeed, the rule, as quoted with approval from Ruling Case Law in the cited case, is thus stated: "Where the pecuniary loss to the parent constitutes the measure of damages, the present value of the probable contributions by the child to the use of the parent, whether in money or in services, *taking in view the probable cost of the child's maintenance and education*, is the principal element of damages for the consideration of the jury." (Emphasis supplied). To us it is apparent that the challenged instruction is no whit less clear than the rule as so stated.

There being no reversible error, the judgment is ordered affirmed.

Affirmed.