DELORES ODOM, A MINOR, BY AND THROUGH KENNETH ODOM, HER NATURAL FATHER AND NEXT FRIEND, APPELLEE, V. ORVILLE WILLMS ET AL., APPELLANTS.
131 N. W. 2d 140
Filed October 30, 1964. No. 35694.

700

Herbert E. Story and Gross, Welch, Vinardi, Kauffman & Schatz, for appellants.

Francis A. McLane and Schrempp, Lathrop & Rosenthal, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

The plaintiff, Delores Odom, a minor, brought this action by her natural father and next friend, against the defendants Orville Willms and Gray Lines Bus Company, Inc., claiming damages for injuries sustained in an automobile accident. The jury returned a verdict for both defendants. The trial court entered an order sustaining plaintiff's motion for a new trial. Both defendants have appealed.

The accident occurred on September 4, 1959, on a county road in Douglas County designated as Highway 31, but generally referred to in the record as Q Street. The evidence shows that Q Street is an east-west road about 18 feet wide. It was paved with brick except that there was a concrete slab on each side of the road 1 foot in width. The road was level, the pavement dry, and visibility good at the time of the accident. The accident occurred between two roads which entered Q Street from the north. One was designated as Sixty-first Street, although a county road. It was a dirt-gravel road which entered but did not cross Q Street. To the east of Sixty-first Street, a distance of about 658 feet, was Sixtieth Street, also a county road, which entered and crossed Q Street. To the south of Q Street between Sixtieth and Sixty-first Streets was a cornfield. There were no public or private ways south of Q Street in this area. A few residences were located on the north side of Q Street and three private drives entered Q Street from the north. No sidewalks or crosswalks existed on Q Street between Sixtieth and Sixty-first Streets. The plaintiff lived with her parents in the immediate area north of Q Street.

The bus company operated a bus line between Ralston and Omaha under proper authority. The certificate of authority in no way restricted the operation of the company's buses in the area here involved. On September 4, 1959, the company's bus stopped at a Ralston school where it was boarded by 15 or more school chil-

dren, including plaintiff and Barbara Sedlak, all of whom were fare-paying passengers. The regular bus stop in the area was at the west edge of Sixty-first Street. The bus approached from the west, crossed Sixty-first Street without stopping and came to a stop approximately 140 feet east of the east line of Sixty-first Street. The evidence is in dispute as to where the bus stopped, but the evidence, including the physical facts existing after the accident, indicates the stated distance. The evidence shows that the bus stopped on the south edge of the pavement and let plaintiff and Barbara Sedlak out at the front door onto the 6-foot shoulder of the road. The two girls, then 8 years of age, proceeded west, plaintiff running north at the rear of the bus into the path of the Willms car approaching from the east. The bus proceeded on its way, the driver stating that he did not know at the time that an accident had occurred. The evidence shows that the bus was beginning to move when plaintiff darted into the path of the Willms car.

There is evidence by the manager of the bus lines that there were no regular stops, although the point immediately west of Sixty-first Street was generally considered a regular stop. He testified that the bus was ordinarily rerouted to pick up and discharge passengers in this area on the north side of Q Street after the Omaha public schools were opened in the fall as a protection to school children. School had taken up in Ralston 2 days before the accident, but no rerouting had been made because the Omaha schools had not reopened. He further testified that drivers were cautioned to be especially alert in loading and unloading school children, to try and watch where they cross the streets, and to be careful when they were stepping on or off a bus to avoid injury. It was stated that the safety of passengers, both school children and adult passengers, is always a topic of safety at safety meetings with the drivers. Other pertinent evidence will be discussed in connection with the

particular legal points to which they have application.

At the close of plaintiff's evidence, and at the close of all the evidence, each of the defendants moved for a directed verdict. A determination of the correctness of the rulings on these motions is required before the correctness of the court's instructions, which are questioned, need be considered.

The plaintiff alleged that Willms was guilty of negligence in failing to keep a proper lookout, in operating his automobile at an excessive rate of speed, in failing to turn or stop his automobile to avoid hitting the plaintiff, and in operating his vehicle with defective brakes contrary to section 39-773, R. R. S. 1943. Willms denied generally and alleged that he was not guilty of any act of negligence causing or contributing to the accident.

The evidence is undisputed that Willms approached the bus from the east on his right-hand side of the road. There is no evidence in the record in plaintiff's case-in-chief as to the speed Willms was traveling when he first saw the bus, or immediately prior to the accident. He stated that he saw no one leave the bus, although he recollects some movement at the front end of the bus that might indicate that a passenger had been discharged therefrom. He did not know that the two children had left the bus or that school children were riding this common carrier bus. He testified that he first knew of a child in the vicinity when plaintiff ran from behind the bus directly into the path of his automobile. He stated that plaintiff was from 6 to 8 feet from his car when he first saw her. His car struck the plaintiff and she was thrown or rolled 15 to 20 feet from the left front of his car. He stated that he immediately applied his brakes and stopped within 15 to 20 feet.

Clarence Fritz, Jr., was a witness for defendant Willms and testified that he had been following the Willms car for several blocks. He was approximately 3 car-lengths back of the Willms car when the accident occurred. He saw the bus for several hundred feet as he

approached from the east. He did not see anyone leave the bus. He did not see the plaintiff until she ran out from behind the bus into the path of the Willms car. The Willms car stopped within 15 or 20 feet. He stated that he had been traveling at 25 to 30 miles per hour before the accident happened and it may be inferred from the evidence that Willms was traveling at about the same speed as he approached the bus.

Mrs. Bessie Stander was an eyewitness to the accident. She stated she was in her driveway visiting with a neighbor about 150 feet to the northwest when she saw plaintiff dart out from behind the bus directly into the path of the Willms car. She stated the Willms car was not traveling too fast because it stopped quickly.

There is no evidence in conflict with the version of the facts told by these three eyewitnesses. There is no evidence that Willms failed to keep a proper lookout under the circumstances shown. There is no evidence that he had any opportunity to turn to avoid the accident.

It is contended that the evidence will sustain a finding of negligence by Willms in that he had defective brakes on his automobile in violation of section 39-773, R. R. S. 1943. The evidence shows that two deputy sheriffs made tests with the Willms automobile in the evening following the accident and found that it required 165 feet to stop the car when traveling 25 miles per hour, and 145 to 150 feet to stop it when it was traveling 20 miles per hour.

Plaintiff offered expert evidence to the effect that the reaction time of a driver of an automobile is three-fourths of a second. The evidence was that an automobile traveling 25 miles per hour would travel 17 feet in three-fourths of a second. The expert evidence further showed that an automobile traveling 25 miles per hour on brick pavement with proper brakes could be stopped in 26 feet. It is evident, therefore, that Willms struck the plaintiff well within the reaction time and the condition of the brakes, even if defective, was not a con-

tributing cause of this accident. It is a fundamental rule of negligence that to be actionable the negligence charged must be the proximate cause of the injury. Jarosh v. Van Meter, 171 Neb. 61, 105 N. W. 2d 531, 82 A. L. R. 2d 714. In other words, the negligence must be such that the accident would not have occurred but for the existence of the negligence charged. It is clear that in the instant case the accident would have occurred whatever the condition of the brakes on the Willms automobile. As to the speed of the Willms car at the time of the accident, the evidence is fragmentary and unsatisfactory. When considered with the distance in which the Willms car was stopped, however, it is evident that the brakes on Willms' car operated more effectively than the evidence of the deputy sheriffs implies, or Willms was moving at a much lesser rate of speed when his car struck the plaintiff than plaintiff's expert assumed. Until the driver of an automobile has notice of the presence or likelihood of children near his line of travel, he is bound only to the exercise of reasonable care, and has the right to assume that others will do likewise; and until he has such notice, the rule is the same as respects children and adults. The evidence shows that the sole proximate cause of this accident, so far as Willms was concerned, was the conduct of the plaintiff in running from behind the bus directly into the path of Willms' oncoming automobile. De Griselles v. Gans, 116 Neb. 835, 219 N. W. 235; Adams v. Welliver, 155 Neb. 331, 51 N. W. 2d 739; Pullen v. Novak, 169 Neb. 211, 99 N. W. 2d 16; Zoucha v. Northwestern Bell Tel. Co., 176 Neb. 408, 126 N. W. 2d 220.

Plaintiff relies upon Strode v. Campbell, 311 Ky. 525, 224 S. W. 2d 673. The case is similar in principle, although there are factual dissimilarities. The case was determined by a divided court and it has been criticized as to its correctness. See Strode v. Commercial Casualty Ins. Co., 102 F. Supp. 240. It is contrary to the law of

this jurisdiction and we do not accept it in support of the point on which it is cited.

Plaintiff asserts that the trial court erred in ruling on the admission of evidence. Plaintiff failed to offer any proof on the speed of the Willms automobile. Willms did not testify to the speed at which he was driving. Plaintiff sought such proof from Willms on cross-examination. Objections that such evidence was outside the scope of the direct examination were sustained. The rulings are correct. If plaintiff desired the evidence of Willms on this point, she should have called him as her own witness. It is fundamental that cross-examination should be limited to the scope of the direct examination.

We conclude that the trial court was in error in failing to direct a verdict for the defendant Willms.

Gray Lines Bus Company, Inc., also urges that the trial court erred in failing to direct a verdict in its favor. Plaintiff alleged in her petition that the bus company was negligent in failing to furnish plaintiff a reasonably safe place to alight, in stopping the bus in a dangerous and unsafe place for discharging plaintiff, in failing to warn plaintiff before leaving the bus of the dangerous traffic conditions in crossing Q Street, and to take care in crossing. The bus company in its answer denied generally and alleged that the accident was proximately caused by the negligence of Willms and the negligence and contributory negligence of plaintiff which was more than slight, and the actions and conduct of the plaintiff.

The crossing of streets by small children is inherently dangerous, particularly when no protection is afforded by mechanical signals or traffic police. The bus company and its driver in the instant case were aware of the dangers to small children in crossing Q Street. The primary question is the duty imposed upon the bus company in the unloading of small children from its bus on the south side of Q Street.

The bus company was operating as a common carrier

on a fixed route and schedule in the carriage of these 8-year-old children. There was no negligence on the part of the bus company in discharging the children from the bus on the south side of Q Street. We fail to see any negligence in the fact that they were discharged in the middle of the block rather than at Sixty-first Street, particularly in view of the driver's undisputed evidence that the signal to stop was made too late for him to stop the bus at Sixty-first Street without risking injury to his young passengers. The pertinent questions are whether or not the children were discharged from the bus in a safe place and whether or not there was a duty to warn the children of traffic danger and to use care in crossing the street. The driver of the bus knew that there were no residences south of Q Street and that the children would in all probability proceed north across Q Street.

It is the general rule that the discharge of passengers on the shoulder of a road is a discharge at a safe place; such passengers become pedestrians and the relation of common carrier and passengers for hire is terminated. Saab v. Omaha & C. B. St. Ry. Co., 170 Neb. 198, 102 N. W. 2d 59; Corrigan v. Portland Traction Co., 157 Or. 496, 73 P. 2d 378; Hudak v. Penn-Ohio Coach Lines Co., 73 Ohio App. 409, 57 N. E. 2d 93. There are cases holding that a safe place for an adult to alight from a bus under the foregoing rule might not be a safe place for a child to be discharged from a bus, and that a jury might be warranted in finding that a duty to warn existed on the part of the bus company. Taylor v. Patterson's Adm'r., 272 Ky. 415, 114 S. W. 2d 488; Houston Transit Co. v. Zimmerman (Tex. Civ. App.), 200 S. W. 2d 848; Gazaway v. Nicholson, 61 Ga. App. 3, 5 S. E. 2d 391; Ashley v. Ensley, 44 Wash. 2d 74, 265 P. 2d 829. We do not here determine if the evidence is sufficient to submit to the jury the question whether or not there was a duty on the part of the bus company to warn plaintiff of danger. This, for the reason that the evi-

dence does not support a finding that there was a failure to warn even if the jury could find that such a duty existed.

The driver of the bus testified that he could not remember whether or not he warned plaintiff and Barbara Sedlak when they left the bus. Plaintiff suffered from an amnesia as a result of the accident and had no recollection of any of the events leading to and following the accident. Barbara Sedlak, who was 11 years of age at the time of trial and 8 years old when the accident occurred, testified as follows: "Mr. McLane: Q. Barbara, when you and little Delores got off the bus did the bus driver say anything to you? A. No. * * * Mr. Welch: Well, Barbara, do you really remember whether he did or not? Do you at this time? Now, do you remember if you girls were playing there getting off the bus and talking and/or anything? Do you remember anything about that? The witness: No." This evidence is not sufficient to submit to the jury the question whether or not the driver of the bus failed in his duty to warn, assuming that such a duty was established.

The burden of proof is on the plaintiff, in order to recover in an action for negligence, to prove that there was a negligent act or omission by the defendant and that it was the proximate cause of plaintiff's injury or a cause which proximately contributed to it. Saab v. Omaha & C. B. St. Ry. Co., supra; Sipprell v. Merner Motors, 164 Neb. 447, 82 N. W. 2d 648. "The burden of proving a cause of action or defense is not sustained by evidence from which the jury can arrive at its conclusion only by mere guess or conjecture." Grosvenor v. Fidelity & Casualty Co., 102 Neb. 629, 168 N. W. 596. We conclude that there was no competent proof that the bus company failed to warn the plaintiff of possible danger, assuming only that such a duty existed. The trial court was therefore in error in not sustaining the bus company's motion for a directed verdict.

The jury found for each of the defendants. Its verdict

has the effect of correcting the error of the trial court in not directing verdicts for each of the defendants. Since defendants are entitled to a verdict as a matter of law, the correctness or incorrectness of the instructions is rendered immaterial and no basis exists for setting aside the verdict to which defendants were entitled as a matter of law. Everett v. Hening, 174 Neb. 573, 118 N. W. 2d 639.

The order of the trial court setting aside the verdict of the jury and granting a new trial is set aside with instructions to reinstate the verdict of the jury or, in the alternative, to sustain defendants' motions for a directed verdict and dismiss the actions.

REVERSED AND REMANDED WITH DIRECTIONS.