## BLUE BIRD TAXI CORPORATION v. AMERICAN FIDELITY & CASUALTY CO.

### No. 3054.

District Court, E. D. South Carolina.

Feb. 24, 1939.

Thomas, Lumpkin & Cain and Heyward Brockinton, all of Columbia, S. C., for plaintiff.

Tobias & Turner, of Columbia, S. C., for defendant.

MYERS, District Judge.

The complaint in this action alleges that the plaintiff corporation, engaged in the business of operating a number of taxicabs for the purpose of transporting passengers in and about the city of Columbia, S. C., obtained in conformity with an ordinance of the said city an indemnity policy from the defendant, American Fidelity & Casualty Company, as required by the said ordinance, and for further liability insurance, whereby the defendant company undertook to save the plaintiff harmless to the extent of $5,000 in the event of injury to any single passenger. It is further alleged that under the terms of said liability policy, the defendant was at all times under the duty to defend any and all actions brought against the plaintiff by or on account of any accident occurring in the transportation of its patrons in or about the city of Columbia, and to pay and discharge any judgments rendered up to the amount of the liability stipulated in said policy. That as a part of said duty, the defendant company was required by law to protect at all times the rights and interests of the plaintiff corporation by virtue of any suit or suits brought against it for accidental injury to its passengers.

The complaint further alleges that, prior to the month of February, 1932, a suit was filed against the plaintiff corporation by one Elizabeth Smoak by her guardian, J. C. Reynolds, in the Court of Common Pleas for Richland County, claiming damages in the sum of $30,000,—of which action the defendant company was immediately advised, and, as required by its undertaking, took charge of said litigation and filed defenses on behalf of the Blue Bird Taxi Corporation, plaintiff herein. It is further alleged that on or about March 29, 1932, the attorneys for the plaintiff in the Smoak action advised the defendant American Fidelity & Casualty Company that they would accept a compromise of $3,500 in settlement of the said claim. That said offer of compromise was refused by the defendant indemnity company, and that a hearing of the case, had shortly thereafter, resulted in a mistrial. It is further alleged that on May 4, 1932, the plaintiff, Blue Bird Taxi Corporation, by its president, wrote to the indemnity company as follows:

"On March 29, 1932, I received copy of letter from Mr. John Hughes Cooper addressed to your attorneys, Messrs. Tobias & Turner, in which he advises that his clients would compromise the above case for $3,500.00. The case was tried and same resulted in a mistrial. I have been reliably informed that every member of the jury stood for a verdict ranging from $500.00 to $4,000.00.

"In view of this information, I feel that the case should be settled and I hereby notify you that if you fail to make a settlement of the same, I will assume that you are defending this action at your own risk and that you will save this company harmless from any damage which it might suffer by reason of your failure to settle."

It is alleged that this demand of the insured was disregarded by the insurer, and that the trial of the Smoak action in the Court of Common Pleas for Richland County, South Carolina, shortly thereafter, resulted in a verdict for the plaintiff, Elizabeth Smoak, in the sum of $7,500.

That upon demand of the indemnity company that the plaintiff Taxi Corporation execute and file a supersedeas bond in the amount of the verdict or in an amount in excess of the liability of the indemnity company, for the purpose of prosecuting an appeal from the said verdict, the plaintiff, Blue Bird Taxi Corporation, notified the said defendant indemnity company that because of its failure to settle the said case in accordance with prior notices, it would be held to the duty of protecting the interests and rights of the said plaintiff Taxi Corporation against levy and sale under the said judgment, to carry on the appeal and finally protect and discharge if necessary the judgment so rendered in favor of the said Elizabeth Smoak. It is further alleged that because of the failure and refusal of the said defendant indemnity company to protect the interests of the insured Taxi Corporation, as required by law, the sheriff of Richland County levied upon the goods and properties of the plaintiff Taxi Corporation; seized its taxicabs and other properties and assets, sold same at public outcry in the city of Columbia, and ruined the good name, business reputation and business integrity and standing of the plaintiff Taxi Corporation; ruined the patronage which the said Taxi Corporation had built up over a long period of years, and caused the said plaintiff to close its doors and cease business and lose its entire equities and all of its properties. It is further alleged that because of the failure of the defendant indemnity company to carry out its obligations and duties to the plaintiff Taxi Corporation, through its negligent, wilful and wanton acts in the premises, and its utter disregard of its said obligations and duties to the plaintiff, the plaintiff Taxi Corporation was damaged in the sum of $75,000.

The answer of the defendant indemnity company admits the issuance of the indemnity policy and the notice of the Smoak suit, and alleges that thereupon all the witnesses to the accident, whose names and addresses had been furnished to the defendant by the plaintiff, including the driver of the taxicab, who was the agent and representative of the plaintiff, made affidavits to the effect that the taxicab and its operator were blameless and that the plaintiff Taxi Corporation was without liability or responsibility for the injury, and thereupon proceeded to defend the action and pursued the same with due diligence. The defendant indemnity company admits that the offer of compromise settlement of $3,500 was submitted to its attorneys, but alleges that, relying upon the sworn statements of the representatives of the plaintiff Taxi Corporation and its president that there was no liability on the part of the plaintiff Taxi Corporation, concluded that the amount of the compromise settlement offered was in excess of any sum to which the plaintiff in the Smoak action was entitled. Defendant indemnity company further alleges that the hearing of the said Smoak action, which resulted in a mistrial, was conducted vigorously, diligently and fearlessly, and that all the witnesses whose names had been furnished by the plaintiff Taxi Corporation were sworn and testified at the said trial, and that the jury to whom the case was submitted was unable to conclude, after many hours' deliberation, that there was any liablity or responsibility on the part of the defendant Taxi Corporation; whereupon the presiding judge ordered a mistrial. It is alleged that, from the verdict rendered on the second trial of the Smoak case, the defendant indemnity company gave due notice of intention to appeal, being advised by its counsel that there was substantial error sufficient to justify reversal by the Supreme Court of the lower court's action; and thereupon called upon the defendant Taxi Corporation to execute the necessary supersedeas bond in order to pursue the appeal,—explaining to the Blue Bird Taxi Corporation that under the proper procedure in the State court such bond must be provided and signed by it, the defendant Taxi Corporation; which demand was refused by the said defendant Taxi Corporation through its president, notwithstanding the fact that the said defendant Taxi Corporation through its president was put upon notice that the failure to execute the required supersedeas bond would likely precipitate a levy by the sheriff under the said judgment.

The further allegations of the answer, with reference to the financial affairs of the defendant Taxi Corporation and prior judgment, upon which execution had been levied, are not material, under the court's view of the question at issue.

The preliminary question for the jury, if submitted, was: Whether or not the handling of the defense to the Smoak action, as set out in the pleadings, by the

defendant indemnity company and shown by the testimony, was negligent, wilful, wanton, and in utter disregard of its obligations and duties to the plaintiff Taxi Corporation. A number of reputable attorneys, experienced in the handling of damage suit defenses under indemnity contract, testified that in their opinion, the handling of the matter by the attorneys for the defendant indemnity company was reasonable, and with due regard of the interests of the plaintiff Taxi Corporation, —both in the refusal of the compromise offer of settlement and in the handling of the appeal. At the conclusion of the testimony, defense counsel moved for a directed verdict. The court was then of the opinion that there was no substantial testimony upon which the jury could find wantonness, wilfulness, negligence, and utter disregard of the rights of the insured, upon which to proceed with the consideration of the question of damages. Plaintiff's counsel urged as controlling authority the expression of the Supreme Court of South Carolina in the case of Tyger River Pine Co. v. Maryland Casualty Co., 170 S.C. 286, at page 292, 170 S.E. 346, at page 348, where the court says, (dissenting from the doctrine expressed in the opinion of the Court of Appeals of Kentucky in the case of Georgia Casualty Company v. Mann, 242 Ky. 447, 46 S.W.2d 777, 779, that the insurer occupies a twofold relation "and may look to its own interests as well as those of the insured" using the following language:

"The very thing which the appellant in the case which we have before us for determination undertook to do was to hold the respondent harmless in the disposition of Chesser's claim. If, in the effort to do this, its own interests conflicted with those of respondent, it was bound, under its contract of indemnity, and in good faith, to sacrifice its interests in favor of those of the respondent. If the Kentucky rule is the law, then a policy of indemnity such as is before us becomes a delusion and a snare. In the nature of things when there is a conflict of interests —as is inevitably the case in all such matters—the company will give the preference to its own."

The jury was discharged from further consideration of the case in order that the court might further consider the effect of the Tyger River Co. decision, and the relation of the case at bar to the facts there. This action was taken under the provisions of Rule 50(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and within ten days thereafter, counsel for the defendant indemnity company moved for judgment in accordance with its motion for a directed verdict. In the Tyger River Co. case, there were findings of fact approved by the Supreme Court that the defendant indemnity company there had been guilty of negligence in the conduct of the defense and in refusing an offer of settlement of the $7,000 verdict for the amount of its guarantee of indemnity; to wit, the sum of $5,000. It is clear, from a study of the opinion, that the court had this finding in mind as well as its final summing-up of the legal duty of the indemnity company to compromise the claim, if that was the reasonable thing to do. Certainly, this court will not take an isolated expression, drastic in terms, as intended to support a principle which would open the door to fraud of the worst kind, and encourage and promote collusion between officers or employees insured against loss in the framing of actions for damages, and make a demand upon the indemnity company to settle within the indemnification limit on the ground that it was legally entitled to do so under the South Carolina law, as embraced within the expression relied upon by the plaintiff herein. The result, further, it seems, would be to discourage the operations of indemnity corporations, at least to the extent of greatly increasing the hazard and the premium charged.

The above comment, however, is not intended in any way to reflect upon the plaintiff corporation or the distinguished counsel who instigated and prosecuted this proceeding. Plaintiff had a right to review of the compliance of the defendant with its legal duty, as defined in the Tyger River case, and that is the question here determined by the court's opinion on the showing made at the trial.

Judgment for defendant will be ordered and entered in conformity with the opinion of the court herein set out and with the provisions of Rule 50(b) of the Rules of Civil Procedure.