## Strode v. Campbell et al.

April 26, 1949.

Rehearing denied December 13, 1949.

526

Woodward, Dawson, Hobson & Fulton and John E. Richardson for appellee Campbell.

R. W. Keenon and Carroll Redford for appellee Southeastern Greyhound Lines.

VAN SANT, COMMISSIONER—Reversing.

The appeal is from a judgment, entered upon a verdict of a jury directed by the Court, dismissing plaintiff's petition as to both appellees, Mildred Houser Campbell and Southeastern Greyhound Lines. The suit was instituted by appellant, Less Strode, administrator of the estate of his daughter, Mary Helen Strode, who met her death when struck by an automobile being driven by Mrs. Campbell.

Mary Helen lived with her father and his family on a farm about one and one-half miles south of Cave City in a house approximately one-quarter of a mile east of U. S. Highway 31 W. A lane extends from the highway to the house. She was seventeen years of age at the time of the accident, and had been working at a bakery

in Cave City. In accordance with her daily custom, she rode one of the Greyhound Bus Lines' busses from Cave City to a point on 31 W opposite the entrance to the lane leading to her father's home. She alighted from the bus which immediately departed in the direction of Glasgow traveling in a southerly direction. Mrs. Campbell, a resident of Nashville, Tennessee, was driving her automobile on Highway 31 W in a northerly direction. She was the only eye witness to the accident. From a point approximately one thousand feet south of the Strode lane the road is straight and presents a clear and unobstructed view of the highway to the north. Mrs. Campbell testified that she did not see the bus stop to discharge its passenger. When she first noticed the bus, it was in motion and she could not distinguish its character from that of an ordinary private passenger car until she was practically alongside it. She testified that at that time she was traveling approximately forty-five miles per hour, but when she discovered she was passing a bus she slackened her speed to approximately forty miles per hour. She immediately discovered the deceased in her path ten to twelve feet away running eastwardly across the highway (toward the lane). At that time it was too late for her to veer from her course, stop, or to use any other means to avoid striking the girl. Mary Helen came into collision with the left or westerly half of the grill on the front of Mrs. Campbell's automobile. The hood of the car sprang up and back obstructing the driver's view. The body of the girl was carried approximately one hundred fifty feet to the north of the lane and fell lengthwise, and in the exact center of, the highway, her head pointing to the south, her feet to the north. The automobile was brought to a stop approximately one hundred fifty feet beyond the place the body was deposited. There was no tire mark on the pavement by which the course of the car could be traced. The accident occurred at 7:30 P. M. on the night of January 10, 1947. It was dark, the weather was clear, and the moon was shining. The bus was thirty-three feet in length and eight feet in width. The head and body marker lights were burning. When she alighted from the bus Miss Strode was wearing mittens, slippers, a white head scarf, and jewelry, and was carrying a sack of candy and a small "bundle." Lights were dimmed on both vehicles as they passed each other.

Neither the driver of, nor any of the passengers on, the bus heard the noise of the impact. The girl's body was badly broken but there was no sign indicating it had been run over or dragged along the road. An artery in her leg was severed but no blood appeared to have exuded therefrom, thus indicating that death occurred at the moment of the collision. Her mittens, scarf, and one slipper were found on the east shoulder of the highway approximately six feet beyond the concrete paving and approximately three feet north of the lane. Her jewelry was found on the east shoulder beyond the pavement. Her billfold and the bundle she was carrying were deposited on the bank approximately ten feet east of the pavement and three feet north of the lane. Candy was strewn on the east shoulder north of the lane. The other slipper was found on the pavement midway between the center of the highway and the shoulder to the east thereof. The driver of the bus testified that in stopping to permit Miss Strode to alight, his right front wheel was on the west shoulder of the road and his left front, and perhaps both of his rear, wheels were on the paved portion of the road and the front of his bus extended approximately seven and one-half feet toward the center from the west shoulder of the highway. Two witnesses testified that on the night of the accident Mrs. Campbell told them that the lights on the bus blinded her, thus rendering it impossible for her to see Miss Strode in time to avoid the accident. Mrs. Campbell admitted that she talked to these witnesses on the occasion mentioned by them, but denied that she stated she was blinded by the lights of the bus.

Counsel for appellant asserts in his brief that the cause of action against the bus company was instituted in expectation that Mrs. Campbell would testify that she was blinded by the lights of the bus. At the conclusion of all the evidence, both defendants moved the Court for peremptory instructions. The Court indicated that he would sustain both motions, whereupon plaintiff moved the Court to be permitted to dismiss the action against the bus company without prejudice to his right thereafter to institute another action against it. This motion was overruled, and the Court instructed the jury to find for both defendants. It is now insisted that the Court erred (1) in refusing to permit

plaintiff to dismiss his action against the bus company without prejudice and (2) in directing a verdict in favor of Mrs. Campbell.

Section 371 of the Civil Code of Practice provides: "An action, or any cause of action, may be dismissed without prejudice to a future action—(1) By plaintiff. By the plaintiff, before the final submission of the case to the jury, * * *." In construing this section of the Code in Vertrees' Adm'r v. Newport News Miss. V. R. Company, 95 Ky. 314, 25 S. W. 1, and Wilson v. Sullivan, 112 S. W. 1120, we held that a plaintiff has the right to dismiss his action without prejudice although the motion to dismiss is not made until after the Court has sustained the opposing party's motion for a peremptory instruction; provided the motion is made previous to the time the Court actually instructs the jury to find a verdict against the party moving to dismiss. This practice has been firmly settled and undoubtedly the decisions in the above styled cases correctly construe the section of the Code above quoted. But counsel for the bus company argues that, if the Court did commit error in refusing to permit appellant to dismiss his cause against it, the error was not prejudicial because the evidence on this trial shows conclusively that the bus company was without fault on the occasion mentioned in the petition. This contention is without merit. A party moving to dismiss without prejudice recognizes the fact that he has failed in some manner to unerringly sustain his action against the opposing party. But the mere fact that he failed to make out his case in the original action is by no means conclusive of the fact that he will not be able to do so in the future. The very purpose underlying the enactment of Section 371, supra, is to permit a litigant to avoid the bar presumptively arising from a judgment on the merits of the case. The entry of a judgment is always prejudicial to the unsuccessful party and to refuse to sustain a motion whereby the litigant may avoid the entry of a prejudicial order, if an error at all, is a prejudicial one. All members of the Court, except Judge Thomas, are of the opinion that this error of the Lower Court was prejudicial to appellant's substantial rights.

A majority of the Court likewise is of the opinion

that the Court erred in sustaining Mrs. Campbell's motion for a directed verdict in her favor. It is their view that since the headlights of the bus could have been seen for over a thousand feet by one keeping a lookout ahead, there was sufficient evidence by proof of the burning of the body marker lights, for the jury to infer that the driver of the automobile could have discovered that the approaching vehicle was a bus, and that it had stopped for the purpose either of taking on or discharging a passenger; and, if the identity of the bus was discovered by the driver of the automobile or by the exercise of ordinary care could have been discovered by her, it was her duty to anticipate the discharge of a passenger and the possibility that the passenger would cross the highway, in which event it was Mrs. Campbell's further duty to slacken her speed to such an extent that she would have reasonable control of her automobile to avoid its colliding with a pedestrian on the highway, and additionally to sound her horn as a warning to any person who might have been discharged from the bus at that point. Short Way Lines v. Sutton's Adm'r, 291 Ky. 541, 164 S. W. 2d 809; Heskamp v. Bradshaw's Adm'r, 294 Ky. 618, 172 S. W. 2d 447. The majority is of the further opinion that the jury reasonably could have inferred that Mrs. Campbell was traveling at a rate of speed which under KRS 189.390(1) (c) creates a prima facie case of unreasonable and improper driving from the following facts: (1) Mrs. Campbell testified that she was going at the very limit of speed which under the statute she could attain without admitting a fact which would have established a prima facie case of negligence; and (2) her automobile traveled in excess of three hundred feet from the place it struck the deceased before she was able to, or at least did, bring it to a stop. Thus the Court should have submitted the case to the jury under an instruction incorporating the law in respect to the duty of a driver of an automobile to keep a lookout ahead, to travel at a reasonable rate of speed considering the condition of the traffic and the highway at the place of the accident, and the duty upon discovering a bus halted on the highway to reduce her speed and to sound timely warning of her approach to the bus. The fact that some of decedent's clothing and property she was carrying was found beyond the paved portion of the highway

does not constitute sufficient evidence for a jury reasonably to infer that at the time of the accident the deceased was in a place of safety on the east berm of the highway, as is argued by counsel for appellant. Shoes worn and packages carried by persons coming in contact with a motor vehicle may be thrown in countless directions and for unaccountable distances.

It is unnecessary for us to determine whether the statements allegedly made by Mrs. Campbell on the night of the accident were admissions against interest, therefore admissible as substantive evidence. Undoubtedly the evidence was competent, either as substantive testimony or as affecting, if it did, the credibility of the witness (appellee) Mrs. Campbell. But since no objection was made to this testimony the Trial Court was not required to rule on the character of the evidence. We therefore specifically reserve a decision in respect to this question.

For the reasons stated, the judgment is reversed with directions to grant appellant a new trial as to both appellees, to be conducted in such manner as not to be inconsistent with this opinion.

Judge Cammack and Judge Thomas dissent from the views herein expressed in respect to reversing the judgment entered in favor of Mrs. Campbell.

Judge Thomas (dissenting).

The writer dissents from the majority on two grounds: (1) There was no substantial evidence that appellee, Mrs. Campbell, was negligent, and (2) the deceased, Mary Helen Strode, was guilty of contributory negligence as a matter of law.

The effect of this decision is to allow the jury to speculate and imposes upon the operator of an automobile on an open concrete highway duties which are not prescribed by statute and are unreasonable. Mrs. Campbell testified that at the time of the impact she was moving at forty miles an hour. The only other evidence which might contradict her is the fact that she traveled some 300 feet after striking the deceased. Though it might be corroborative of other evidence of excessive speed, it is wholly insufficient in itself to establish that fact.

To determine the initial speed of a vehicle by the distance it travels, without skidding, after striking a pedestrian is entirely speculative. In such a moment of emergency the reactions of drivers may be entirely different. This is especially true when the impact caused the hood of Mrs. Campbell's car to spring up in her face. Such a sudden unforeseen experience might cause the best of drivers to lose control of his automobile for a few seconds, within which time it might travel, three, four or five hundred feet. To create an issue of speed on the single item of evidence with respect to the distance traveled after the accident is to give to this evidence a significance not consonant with practicalities.

The majority of the Court are apparently of the opinion that even if Mrs. Campbell was driving at the speed about which she testified, it was too fast in view of the fact that she was passing a bus. This imposes on the driver of an automobile on an open highway at night the duty of discovering that an oncoming vehicle is a bus, which might have discharged a passenger who would be running across the road without any care for his own safety. It is common knowledge that it is very difficult at night to determine the type of vehicle which is approaching on a highway. Trucks and busses have similar body marker lights. Even so, these are often not discovered until the meeting vehicles are almost abreast of each other.

It is the duty of the operator of an automobile to keep a lookout ahead. His principal attention is, and should be, focused on the traffic lane he is following. To require him to make a close inspection of approaching vehicles hidden behind headlights on the opposite side of the road would require him to neglect his primary duty of keeping a lookout ahead. If, however, a driver should determine when he is about to pass a bus, there is no statutory or other duty upon him to slow down sufficiently to stop immediately upon passing, or to sound his horn.

Under the circumstances shown in this case, there is no practical reason why Mrs. Campbell might anticipate the appearance of a pedestrian crossing to her side of the road. Yet the theory of the majority requires her to slow down sufficiently while passing the

bus to stop immediately if someone blindly runs across in front of her. Otherwise, this accident could not have been avoided, regardless of her speed. To say that the operator of an automobile must be prepared to stop immediately upon passing any vehicle at night on an open highway which has side marker lights would tie up traffic all over the state. Under such theory, it would take a person five to six hours to drive from Frankfort to Louisville, in view of the constant stream of trucks and busses on U. S. Highway 60.

Assuming, however, that Mrs. Campbell was guilty of some negligence, it is impossible on the evidence in this case for any reasonable person to reach the conclusion that the deceased herself was not contributorily negligent. KRS 189.570(4) makes it the duty of a pedestrian in the position of the deceased to yield the right-of-way to vehicles upon the highway. Clearly she did not yield the right-of-way. Every bit of evidence in the case points to the inevitable conclusion that she emerged from behind the bus and started across the roadway without taking any care for her own safety. We have recently held that a pedestrian, attempting to cross an open city street between intersections without observing the approach of an oncoming vehicle which he must have seen if he had looked, was guilty of contributory negligence as a matter of law. Tarter v. Wiggington's Adm'x, 310 Ky. 393, 220 S. W. 2d 829.

The same principle must be applied here. Yet the majority opinion completely ignores this question of contributory negligence. It is in the case by pleading and is completely established by the testimony and the circumstances of this accident. There is simply no scintilla of evidence upon which a jury could decide that the deceased complied with her statutory duty or exercised any care whatsoever. Therefore, admitting the soundness of every conclusion in the majority opinion, which I cannot do, Mrs. Campbell was entitled to a directed verdict because of the obviously contributory negligence of the deceased.

I, therefore, most respectfully dissent.

Judge Cammack concurs in this dissent.