### STRODE v. COMMERCIAL CASUALTY INS. CO.

No. 356.

United States District Court
W. D. Kentucky, Bowling Green.

Feb. 5, 1952.

Terry L. Hatchett, Glasgow, Ky., for plaintiff.

Woodward, Hobson & Fulton, Louisville, Ky., for defendant.

SWINFORD, District Judge.

This is an action against the defendant to recover to the extent of the terms of the policy the amount of a judgment secured against its insured in the state court. The alleged liability grew out of an accident in which a pedestrian was killed. The detailed facts of the accident are important to this decision and are set forth in the following quotation from the opinion of the Kentucky Court of Appeals in the case of Strode v. Campbell, 311 Ky. 525, 224 S.W.2d 673:

"Mary Helen lived with her father and his family on a farm about one and one-half miles south of Cave City in a house approximately one-quarter of a mile east of U. S. Highway 31 W. A lane extends from the highway to the house. She was seventeen years of age at the time of the accident, and had been working at a bakery in Cave City. In accordance with her daily custom, she rode one of the Greyhound Bus Lines' busses from Cave City to a point on 31 W opposite the entrance to the lane leading to her father's home. She alighted from the bus which immediately departed in the direction of Glasgow traveling in a southerly direction. Mrs. Campbell, a resident of Nashville, Tennessee, was driving her automobile on Highway 31 W in a northerly direction. She was the only eye witness to the accident. From a point approx-

imately one thousand feet south of the Strode lane the road is straight and presents a clear and unobstructed view of the highway to the north. Mrs. Campbell testified that she did not see the bus stop to discharge its passenger. When she first noticed the bus, it was in motion and she could not distinguish its character from that of an ordinary private passenger car until she was practically alongside it. She testified that at that time she was traveling approximately forty-five miles per hour, but when she discovered she was passing a bus she slackened her speed to approximately forty miles per hour. She immediately discovered the deceased in her path ten to twelve feet away running eastwardly across the highway (toward the lane). At that time it was too late for her to veer from her course, stop, or to use any other means to avoid striking the girl. Mary Helen came into collision with the left or westerly half of the grill on the front of Mrs. Campbell's automobile. The hood of the car sprang up and back obstructing the driver's view. The body of the girl was carried approximately one hundred fifty feet to the north of the lane and fell lengthwise, and in the exact center of, the highway, her head pointing to the south, her feet to the north. The automobile was brought to a stop approximately one hundred fifty feet beyond the place the body was deposited. There was no tire mark on the pavement by which the course of the car could be traced. The accident occurred at 7:30 P.M. on the night of January 10, 1947. It was dark, the weather was clear, and the moon was shining. The bus was thirty-three feet in length and eight feet in width. The head and body marker lights were burning. When she alighted from the bus Miss Strode was wearing mittens, slippers, a white head scarf, and jewelry, and was carrying a sack of candy and a small 'bundle.' Lights were dimmed on both vehicles as they passed each other. Neither the driver of, nor any of the passengers on, the bus heard the noise of the impact. The girl's body was badly broken but there was no sign indicating it had been run over or dragged along the road. An artery in her leg was severed but no blood appeared to have exuded therefrom, thus indicating that death occurred at the moment of the collision. Her mittens, scarf, and one slipper were found on the east shoulder of the highway approximately six feet beyond the concrete paving and approximately three feet north of the lane. Her jewelry was found on the east shoulder beyond the pavement. Her billfold and the bundle she was carrying were deposited on the bank approximately ten feet east of the pavement and three feet north of the lane. Candy was strewn on the east shoulder north of the lane. The other slipper was found on the pavement midway between the center of the highway and the shoulder to the east thereof. The driver of the bus testified that in stopping to permit Miss Strode to alight, his right front wheel was on the west shoulder of the road and his left front, and perhaps both of his rear, wheels were on the paved portion of the road and the front of his bus extended approximately seven and one-half feet toward the center from the west shoulder of the highway. Two witnesses testified that on the night of the accident Mrs. Campbell told them that the lights on the bus blinded her, thus rendering it impossible for her to see Miss Strode in time to avoid the accident. Mrs. Campbell admitted that she talked to these witnesses on the occasion mentioned by them, but denied that she stated she was blinded by the lights of the bus."

Based on the above-quoted facts of the accident, the deceased's administrator filed suit in the Barren Circuit Court which resulted in a directed verdict for the defendant, Mrs. Campbell. On appeal the judgment of the lower court was reversed and the case remanded for trial. It should be recited that on the trial of the case Mrs. Campbell was present and testified. Her testimony was taken down by the court reporter, transcribed and became a part of the record of the evidence.

Upon remand of the case, there began a series of events which must be set forth in chronological order to give a clear picture of the court's conclusions in the case at bar.

At the time of the accident, which occurred on January 10, 1947, Mrs. Campbell was the owner of a policy of liability insurance with the defendant. She was recited in the policy to reside at 1013½ Malvern Avenue, Hot Springs, Arkansas. The policy had been issued to Mildred Houser, which was Mrs. Campbell's former name. She became Mrs. Campbell at a later date.

Under the mandate of the Kentucky Court of Appeals the case was to be tried and by order of the trial judge was assigned for trial in the Barren Circuit Court for January 10, 1950. By letter of December 27, 1949, from the defendant's attorneys to Mrs. Campbell in Tulsa, Oklahoma, she was advised of the date of trial and she telegraphed the attorneys that she would be present for the trial. Through no fault of Mrs. Campbell, but due to illness of one of the attorneys for the defendant, the case was continued before the date of trial had arrived. Letters were addressed to Mrs. Campbell by the defendant's attorneys advising her of the continuance and directing her not to come for the trial. These letters, of date, January 3 and 9, and a wire of January 9, were sent to and received by her at two different addresses, one in Tulsa, Oklahoma, and the other in Hot Springs, Arkansas. Mrs. Campbell preserved these letters and took them to an attorney at Shreveport, Louisiana, where she had taken up her residence.

On March 27 an attorney of Shreveport sent a letter to the defendant's attorney in which he stated that Mrs. Campbell felt that her position of employment would be jeopardized if she were compelled to attend the trial in the Barren Circuit Court. That she desired to cooperate in every possible way and would give her deposition. The defendant's attorneys acknowledged the letter and advised that it would be vital for Mrs. Campbell to attend the trial in person as she was the only witness for the defendant. An offer was made to pay her expenses to the trial. In answer to this letter Mr. Wilson, her attorney in Shreveport, again wrote that Mrs. Campbell could not attend in person since she would suffer great financial loss by losing the position she had accepted. On April 6 the defendant's attorneys wrote to Mr. Wilson a letter containing the following paragraph: "If Mrs. Campbell refuses to attend the trial as indicated in your letter, we will withdraw from the defense of her case and not be responsible for any judgment rendered."

On April 17th, at the call of the docket in the Barren Circuit Court, the case was assigned for trial on May 2nd.

On April 27th, the attorneys wrote to Mr. Wilson advising him of the date of the trial. They also wrote to another attorney in Shreveport, who had been a school mate of one of the defendant's attorneys, and asked him to try to locate Mrs. Campbell. It was reported that Mrs. Campbell had left town and had left no forwarding address. Although the defendant had never had a letter or telegram it had sent directly to Mrs. Campbell returned for lack of sufficient address, it nevertheless made no effort to communicate with her directly.

From the record it appears that although the case was assigned for trial by the court in the presence of the defendant's attorneys on April 17th, no effort was made to communicate this fact to Mr. Wilson for ten days, or until April 27th, which was only five days before trial. The distance between Glasgow, Kentucky, the place of trial, and Shreveport, Louisiana, is not known to the court except to say that it is several hundred miles. Evidently the letter of April 27th, did not reach Mr. Wilson until the 29th, which was Saturday. This gave the defendant three days to hear about the trial and to get to the trial, assuming Mr. Wilson made every effort to communicate with her as soon as he received the letter.

On the day of the trial the attorneys for the defendant appeared in court, asked the Sheriff to call Mrs. Campbell's name three times. This was done. She did not answer. The attorneys withdrew from the case. No motion for continuance or reassignment was made. No excuse was offered for the absence of the defendant. The case was tried solely on the proof of the plaintiff. The jury returned a verdict

in the sum of $30,000.00 against Mrs. Campbell.

This action was instituted by the judgment creditor against the insurance company in the Barren Circuit Court and removed to this court on petition by the defendant.

The insurance company sets up as a defense a provision of the policy which states: "The insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

Alleging that Mrs. Campbell failed to comply with this condition the defendant says it had a right to abandon the defense.

The plaintiff in the instant case denies that this term of the policy can be applied under the facts. He further pleads the Kentucky Financial Responsibility Law, which is Chapter 187, Sections 187.290 to 187.990, Kentucky Revised Statutes.

I will first consider the construction and application of the Financial Responsibility Law.

The plaintiff contends that all defenses to liability on the policy as between the insurer and the insured are cut off when, as in this case, the insurance company complies with K.R.S. Sections 187.330(4) and 187.470, by filing with the Department of Revenue in Frankfort, Form SR–21, which is notice of the existence and effectiveness of the liability policy owned by Mrs. Campbell at the time of the accident. Such notice was given on January 11, 1947, the day following the accident. In other words, it is insisted that even though Mrs. Campbell breached a condition of the policy by failing to cooperate in defending the lawsuit against her in the Barren Circuit Court, the insurance company is bound for the judgment and cannot set up such breach of condition against a judgment creditor.

There has been no construction of the statutes involved by our Kentucky Court of Appeals. The former act on the subject of Financial Responsibility, adopted in 1936, was repealed by the present act, passed in 1946. The 1936 act was construed by the Kentucky court in the case of Travelers Insurance Co. v. Boyd, 312 Ky. 527, 228 S.W.2d 421. In that case it was held that the act did not apply to the first accident and was meant only to require compliance with its terms to justify permitting car operators to continue to operate motor vehicles on the streets and highways of the state.

Unquestionably this decision is sound as a reading of the entire act discloses that it refers repeatedly to "future accidents." Sections 187.050–187.070, 1944 Edition, Kentucky Revised Statutes.

I have grave doubt, however, but that the present act, the act of 1946, may not be held to apply to the first accident when a case involving the question reaches our highest court in Kentucky.

Whatever future court decisions may disclose, I feel that the question insofar as this court is concerned has been settled by Judge Roy M. Shelbourne, in the case of State Auto. Mut. Ins. Co. v. Sinclair, D.C., 96 F.Supp. 267, decided, November 24, 1950. In that case the court placed the same construction on the act of 1946 as the Kentucky Court of Appeals in Travelers Ins. Co. v. Boyd, supra, placed on the act of 1936. I do not believe there should be different decisions on the same question in the same district, especially so when the question is of such grave doubt.

Singularly enough, while I was preparing this opinion the January 29, 1952, issue of United States Law Week (20 L.W. 2314) came to my desk. It contained a digest of the opinion of U. S. District Judge Graven, of the Northern District of Iowa, in the case of Hoosier Casualty Co. of Indianapolis, Indiana v. Fox, 102 F.Supp. 214. This opinion involved certain provisions of the Iowa Uniform Motor-Vehicle Safety Responsibility Act.

Without burdening this opinion by further discussion of this law, a student of the question might refer to the following cases: Metropolitan Casualty Ins. Co. v. Albritton, 214 Ky. 16, 282 S.W. 187 and Sun Indemnity Co. v. Dulaney, 264 Ky. 112, 89 S.W.2d 307.

In keeping with the pronouncement in State Auto. Mut. Ins. Co. v. Sinclair, supra, I must conclude that the insurance company had a right to set up non-cooperation as a defense to this action.

I will now discuss the defense of want of cooperation and assistance as ground to void the policy. What is the proper construction of this provision of the policy in the light of the facts and circumstances disclosed by the evidence and such reasonable inferences as may be drawn from the evidence?

The intentions of the parties at the time of inception of the contract was that there should be mutual assistance in defending any effort to obtain money from Mrs. Campbell growing out of her operation of the car described in the policy. The legal part of any claim for damages was to be left to the insurance company. It was to hold her harmless to the extent of the terms of the policy and to furnish all legal counsel required and to notify her when she was needed to assist. That was certainly the spirit and reasonable interpretation of the terms of the policy.

■ It should be pointed out that Mrs. Campbell never had notice of the date of trial of her case. At no time after the case was assigned for trial or for several weeks before had a direct communication been sent to her, although all prior direct letters and telegrams had been received by her. The communications to Wilson and O'Quinn are not competent evidence and cannot be considered as evidence of notice of trial or communication to her. The policy contained her address and the defendant had communicated with her at that address. Lester Wilson cannot be known to this record as having any authority to speak for Mrs. Campbell. His statements that he communicated the correspondence from defendant's attorneys to her are not evidence. They are at best hearsay and their truth or untruth is of no consequence. Mrs. Campbell may never have seen the letters. Mr. Wilson's and Mr. O'Quinn's statements that they made every effort to contact her are not to be accepted as evidence against her. The effort they made, in the light of all

the circumstances, may have been great or small. That was a matter of opinion. They undertook to speak for Mrs. Campbell by reciting the substance of a conversation with some unknown person whom they said represented herself to be Mrs. Campbell's former landlady. No court could stretch the rule liberalizing the acceptance of testimony so far as to hold that such statements should be received as substantive evidence.

■ Whether exceptions were properly taken to the depositions is of no consequence. The court may determine on its own motion what is and what is not legal evidence in a factual question it is called upon to decide. Notice to Mr. Wilson was not notice to Mrs. Campbell.

I have read and reread the case of Strode v. Campbell, supra. The opinion of the court together with the strong dissenting opinion by Judge Thomas, concurred in by another member of the court, suggests, to say the least, that the court went a long way towards some entirely new law in reversing the case. I am convinced that a trial of the case wherein Mrs. Campbell's testimony could have been read from the transcript at the former trial might easily have resulted in a jury verdict in her favor even though she did not appear at the trial in person. At least, a much smaller amount in damages might have been awarded against her. The case against her was very weak. The case of contributory negligence on the part of the deceased was strongly in favor of Mrs. Campbell. I quote from the dissenting opinion in Strode v. Campbell, supra [311 Ky. 525, 224 S.W.2d 677.]: "Assuming, however, that Mrs. Campbell was guilty of some negligence, it is impossible on the evidence in this case for any reasonable person to reach the conclusion that the deceased herself was not contributorily negligent. KRS 189.570(4) makes it the duty of a pedestrian in the position of the deceased to yield the right-of-way to vehicles upon the highway. Clearly she did not yield the right-of-way. Every bit of evidence in the case points to the inevitable conclusion that she emerged from behind the bus and started across the roadway without taking any

care for her own safety. We have recently held that a pedestrian, attempting to cross an open city street between intersections without observing the approach of an on-coming vehicle which he must have seen if he had looked, was guilty of contributory negligence as a matter of law. Tarter v. Wiggington's Adm'x, 310 Ky. 393, 220 S.W.2d 829."

It appears from the record that the defendant was only looking for an excuse to abandon its insured's case. Mrs. Campbell had given a perfectly rational explanation of why she could not attend the trial. She showed her good faith in counseling with an attorney in her home town. She told him she could not leave her job, but would gladly give her deposition. She told him she was nervous and upset over the matter and could not appear. A woman involved in an automobile accident in which a young girl is killed might easily become physically ill with nervousness at the thought of having to review the distressing circumstances in open court for a second trial. A motion for continuance supported by the facts contained in the record might have been sustained. No such motion was made. No effort to take any step for the benefit of the defendant's insured is even hinted by the record.

Liability insurance between the company and its insured presupposes that the company will become the champion of its insured when misfortune, in the way of accident, overtakes her and she is sued in a foreign state and brought to trial among strangers. It is something of a trust relationship where the interests of the insured and not the interest or convenience of the insurance company are paramount.

An offer in compromise is shown to have been made by the plaintiff to the insurance company in the former case of Strode v. Campbell, supra, before judgment in the Court of Appeals. Mrs. Campbell was not even advised that such offer had been made. This is not the kind of cooperation from the company which the insured had a right to expect.

I am convinced, upon a careful consideration of the whole record, that Mrs. Campbell showed no sufficient lack of co-operation within the meaning of the policy to justify the company in abandoning her case.

It is apparent that the casualty company was much more concerned in finding an excuse to set up a legal barrier between it and its client than it was to fulfill its just obligation to save her harmless, or at least mitigate the damages in what must appear at best a very weak case against her.

In the letter from its attorneys to the casualty company, of date, May 3, 1950, where the company is advised of the action of the attorneys in withdrawing from the case, there is this language: "We did this, as Mr. Hobson suggested in his telephone conversation, for the purpose of denying liability on account of non-cooperation in the defense as provided in the policy."

This would indicate that on the day of the trial the company was thinking more of perfecting a defense for itself than it was of defending Mrs. Campbell.

I must conclude that the defendant did not discharge its obligations under the terms of the policy to its insured, Mrs. Campbell, by making a genuine effort to protect her rights on the call of the case for trial in the Barren Circuit Court on May 2, 1950.

The question of what is and what is no cooperation or non-cooperation cannot be left to the opinion of the parties to the contract. The insurance company should have under the circumstances of this case, even in the absence of Mrs. Campbell, made the best defense possible and in the event of a judgment against the policyholder let the court later determine whether or not there had been proper cooperation from the insured. It should not have left Mrs. Campbell without a voice being lifted in her behalf.

I cannot conclude that there should be a recovery for more than the face of the policy. There are sufficient mitigating circumstances to take the case out of the rule of Georgia Casualty Co. v. Mann, 242 Ky. 447, 46 S.W.2d 777. While there may be ordinarily an obligation to discuss with the insured the proposition of settlement, I

cannot see from the facts disclosed that there was any breach of duty in not presenting the proposal of a $4,000.00 settlement here. The case lacked merit in both law and facts and the company was justified in placing no importance upon the offer. It is true I have recited the fact of this failure to so advise Mrs. Campbell as a circumstance considered in reaching my conclusions. I do not, however, believe the justice of this case warrants a full recovery of the total amount of the judgment. Christian v. Preferred Accident Ins. Co., D.C., 89 F.Supp. 888; Blue Bird Taxi Corporation v. American Fidelity & Casualty Co., D.C., 26 F.Supp. 808.

The plaintiff may recover the face amount of the policy.

Formal findings of fact, conclusions of law and judgment may be prepared and submitted by the attorney for the plaintiff. A copy of such proposed orders will be sent to the attorneys for the defendant.