**Nathaniel BAKER et al., Appellants,**

v.

**Leonard SIZEMORE, Suing by his mother and next friend, Ruby Sizemore, Appellee.**

Court of Appeals of Kentucky.

Sept. 16, 1960.

Willis W. Reeves, Maxwell P. Barret, Hazard, for appellants.

C. W. Napier, Hazard, for appellee.

PALMORE, Judge.

Leonard Sizemore, 10 years of age, while crossing Kentucky Highway 80 in Perry County, Kentucky, was struck and severely injured by a pickup truck driven by French Stacy and owned by Nathaniel Baker, who was a passenger in the truck. A suit by Sizemore against Stacy and Baker resulted in a $5,000 verdict and judgment against both defendants. Defendants appeal on the ground that the evidence was insufficient to submit the case to the jury and on the further ground that even if there was a case for the jury the instructions were erroneous.

Kentucky Highway 80, running east and west between Hazard and Hyden, is of blacktop or similar hard surface construction 20 feet wide at the scene of the accident. At this point it runs parallel with and immediately north of Big Creek, and from the south another road known as Kentucky Highway 1096 crosses the creek and enters Highway 80 at right angles, ending there. Directly across and north of Highway 80 from the mouth of Highway 1096 is the home of Mary Baker. The accident happened at or very near this intersection in front of the Mary Baker place. Defendants were proceeding eastwardly or "down" Highway 80 toward Hazard at a speed they estimated to be 25 to 30 m.p.h. Plaintiff and his father, on their way afoot to a store, had caught a ride and ridden westwardly "up" Highway 80 in a coal truck driven by Harold Joseph and had alighted in front of Mary Baker's; since Joseph was going on toward Hyden and their destination was across the highway, apparently somewhere along Highway 1096, the intersecting road to the south. When the Joseph truck pulled away after letting them out, plaintiff and his father started across to the south side of

Highway 80 and plaintiff was struck by the eastbound pickup of the defendants.

At the vicinity of the accident Highway 80 is a heavily traveled, "very curvy" mountain road. The maximum safe speed is 40 m.p.h. On March 15, 1958, at the time of the accident, it had been snowing and misting and the road was slick, but there is no evidence that this circumstance contributed directly to the accident. Both defendants lived in the vicinity and were well familiar with the highway.

West of the point of the accident Highway 80 curves to the north. Defendants, coming from that direction, could neither see nor be seen until, in their leftward turn, they reached a certain point of emergence from this blind curve. When Joseph stopped his coal truck in front of Mary Baker's house at the intersection the approaching pickup truck was not in sight, nor was any other traffic, and for that reason Joseph stopped on the highway itself instead of pulling onto the shoulder. According to his testimony, the pickup truck rounded the curve and came into view as the Sizemores were alighting from the right side of the cab of his coal truck. Stacy and Baker saw the coal truck stopped on its proper side of the highway as they emerged from the curve. However, they did not see the Sizemores, nor did the Sizemores see them. They did not slacken speed or sound a warning, observing no need to do so. Plaintiff's father held his hand until the coal truck pulled clear and then released him. Both he and the boy started across, the boy in front.

Thus far, what has been here recited in the way of facts is fairly well established beyond contradiction. It is also undisputed that Joseph's coal truck was 30 feet long and 7½ feet wide, with a bed 10 feet in over-all height from the ground, and that the pickup truck of defendants was some 5 feet wide. The rest of the evidence is rife with inconsistency, particularly with respect to distances.

The plaintiff himself says that Joseph's truck had gone "pretty fer" up the road and that he could see all the way to the curve when he started across; that the pickup was not in sight; that he had waited by the side of the road until the coal truck went on; that he walked, not ran, as he proceeded across the road; that before reaching the center of the highway, but about a foot short thereof, he heard a noise, saw the pickup truck "coming a flying," tried unsuccessfully to dodge it, and was struck. He is positive he never reached the center line of the highway.

Harrison Sizemore, the father, says he and the boy got out of the truck and he held the boy's hand "until the tail end of the truck got in the clear"; that they started across the road with plaintiff ahead of him, walking, not running; that all of a sudden he heard a noise and stopped; that he did not actually see the collision; that the next thing he remembers is seeing his son rolling or tumbling along the highway on the left side of the road "going down" (i. e., the north or westbound lane, being the wrong side of the road for defendants), with the pickup truck of defendants closely following and eventually stopping almost against his body; that the coal truck of Joseph had not gone very far, and that Joseph stopped and came back. He thinks the coal truck stopped about 50 feet beyond where he and the boy got out. He estimated that his son was knocked some 20 feet and came to rest near the north edge of the pavement. His estimates of the distance from the point of the accident to the curve in the highway varied from 30 feet to 125 feet.

Joseph, driver of the coal truck, saw the pickup truck approaching as the Sizemores were getting out of his truck. He judged the distance to the curve to be 50 to 75 feet. He had pulled out 15 to 20 feet when the pickup met and passed by his truck. He was occupying all of his side of the road, and defendants were on their side. He heard a shout, looked in his rear view mirror, and saw plaintiff down in the road, lying in the middle of the north or westbound lane. He did not see the accident but thinks it occurred within 15 feet from

where the vehicles passed. He did not, nor did anyone else but Harrison Sizemore, give an estimate as to the distance between the point where he let the Sizemores out and the point where he stopped after the accident. He never saw defendants' vehicle on the wrong side of the road.

Willie Begley, another witness for plaintiff, estimated the distance from the intersection to the curve to be 75 feet.

Both defendants testified that they never saw either of the Sizemores until the instant of the accident. Stacy, the driver, was watching his own lane of traffic and didn't see the plaintiff until he struck him. To be precise, he said, "I hit him before I seen him." Until that moment the coal truck blocked the view between him and the plaintiff. He saw the coal truck but could not say whether it was moving or sitting still. He brought his vehicle to a halt within 15 to 20 feet after the collision. He and Baker, the owner-passenger, both said they were traveling 25 to 30 m.p.h. and that the accident happened in their lane of traffic. Baker testified that as they came even with the back of the coal truck "the boy shot out and we hit him * * * when we got to the back end of it he came out from the back and one step and he was in front of us." His estimate of the intervening distance when he first caught sight of the coal truck was 200 feet "or more."

A map introduced by agreement of the parties shows an unobstructed straight line view of at least 300 feet between the point where Joseph's truck stopped opposite the intersection and the point where the pickup truck fully emerged from the curve. This physical fact destroys Harrison Sizemore's guesses ranging from 30 feet to "it might be" 125 feet, Joseph's estimate of 50 to 75 feet, Begley's estimate of 75 feet, and, to a lesser degree, Baker's approximation of 200 feet, and casts doubt on the reliability of all these witnesses in the matter of distances. If Stacy was driving 25 m.p.h. (nearly 37 feet per second) and made no attempt to stop until he struck the plaintiff it is scarcely possible that he could have stopped within 20 feet. That Joseph's 30-foot truck had traveled but 15 to 20 feet before meeting the pickup truck and the accident happened within 15 feet of the point where the vehicles passed is also subject to serious questions of interpretation and credibility. The little boy's insistence that the coal truck was pretty far up the road and that he could see clear to the curve and nothing was coming is, of course, clearly mistaken and to be disregarded. He could not see through the coal truck and, were it otherwise, would have been bound to see the approaching pickup truck.

Out of this mess, however, certain conclusions seem to be inevitable. The first is that Joseph's coal truck had not cleared the point of the accident by more than a very short distance when the plaintiff was struck. Otherwise the Sizemores and the occupants of the pickup truck would have been able to see each other in time for one or the other, or both, to avoid the accident. It is scarcely credible that they actually had such an opportunity after the coal truck got between them. This conclusion is fortified by the evident proximity of the coal truck at the moment plaintiff was struck, be the distance more or less than 50 feet. The second is that if the plaintiff were to be presumed capable of contributory negligence he would certainly be guilty. See Jordan v. Clough, Ky., 1958, 313 S.W.2d 581. However, since the child was between the ages of 7 and 14 years, wherein there is a rebuttable presumption against that capacity, the trial court gave a contributory negligence instruction based on his failure to exercise such care as would be customarily observed under like conditions by ordinarily prudent children of his age, experience and instruction, and this was as far as the law authorized the court to go. As a matter of fact, since there was no evidence to rebut the presumption even this instruction would not have been authorized except for its having been offered by plaintiff's counsel. See Baldwin v. Hosley, Ky. 1959, 328 S.W.2d 426. It follows, of

course, that a 10-year old child could not be found guilty of negligence as a matter of law.

Drawing from the evidence the inferences most favorable to the plaintiff, conceivably the jury could see this picture: Coming around a curve on a tortuous main-traveled mountain highway, defendants saw 300 feet in front of them a large truck stopped on the road, in the opposite traffic lane facing them. Considering Joseph's testimony that at this moment the Sizemores were getting out of the cab of his truck, the defendants could have seen them, but did not. They were traveling at 30 m.p.h. The road was wet and slick. They did not slacken speed or sound their horn. They knew that there was an intersecting road directly across the highway from the stopped truck. They saw or could have seen the truck begin to move up the highway toward them. They passed the truck, drifted or swerved over the center line and immediately struck the plaintiff, whose intrusion upon the highway had been obscured from their vision by the truck. In this connection, though it is extremely improbable that defendants crossed the center line of the road so immediately after safely meeting and passing the truck, yet we cannot say it was impossible. The boy's categorical testimony in this respect is corroborated to some degree by the testimony of both his father and Joseph that his position immediately after the impact was in the north traffic lane. The jury had the right to believe it in the absence of manifest impossibility.

■ Taking this picture as the case against the defendants, we have no difficulty in concluding that they were not entitled to a directed verdict. The evidence that they struck the plaintiff on the wrong side of the highway alone was enough, in the absence of an explanation other than a denial, to take the case to the jury. Stark's Adm'x. v. Herndon's Adm'x., 1943, 292 Ky. 469, 166 S.W.2d 828.

■ The trial court gave appropriate defense instructions on sudden appearance and unavoidable accident. It is strongly contended, however, that there was no evidence to support the instructions as to lookout, reasonable speed, reasonable control, and sounding of the horn, all of which were enumerated among the duties of the defendants. These duties, of course, all rest on the criterion of what an ordinarily prudent man would have done under like circumstances, and except where the answer is clear it is the province of the jury—not the court—to apply that test. Slusher v. Brown, Ky.1959, 323 S.W.2d 870, 872.

■ It is always the duty of a driver to keep a lookout ahead for persons on or so near the highway as may be likely to come into contact with his vehicle, and an instruction to that effect is always proper unless it is clear that a proper lookout would not have averted the accident. In this case the jury had evidence from which to infer that a competent observation of conditions ahead would have brought to the attention of defendants that the coal truck had discharged a man and a small boy at the side of the highway opposite the mouth of a road leading off in another direction. See Kiser v. Justice, Ky.1960, 336 S.W.2d 32, 33; Strode v. Campbell, 1949, 311 Ky. 525, 224 S.W.2d 673, 675; United Fuel Gas Co. v. Friend's Adm'x, Ky.1954, 270 S.W.2d 946, 949; Dixon v. Stringer, 1939, 277 Ky. 347, 126 S.W.2d 448, 451. A reasonable man might have foreseen the possibility of their crossing to the intersecting road. He would not be expected to anticipate that an adult would emerge precipitously from behind the truck, but a child of tender years is another matter. That the child might do so is distinctly within the realm of reasonable foreseeability. Lehman v. Patterson, 1944, 298 Ky. 360, 182 S.W.2d 897. From this it follows that a reasonable man, especially on a slippery surface, might be expected to diminish his speed, give the on-coming truck a wide berth, and bring his vehicle under a control commensurate with the possibility of an emergency in the form of the child attempting a crossing. By the same reasoning the jury might well

find that a reasonable man would have sounded his horn. Cf. Kelly v. Marshall's Adm'r., 1938, 274 Ky. 666, 120 S.W.2d 142, 148. All of this proceeds, of course, from the premise that the defendants in the exercise of ordinary care could have seen the plaintiff alight from the truck in good and sufficient time to be alerted, which (in addition to the different presumption as to contributory negligence) distinguishes the case from Jordon v. Clough, Ky.1958, 313 S.W.2d 581. Also distinguishable is Monroe v. Townsend, 1948, 308 Ky. 123, 213 S.W.2d 803, in which an adult pedestrian was held contributorily negligent as a matter of law.

■ The duties of lookout, reasonable speed, reasonable control, and reasonable warning if necessary are so basic that their inclusion in the instructions covering a pedestrian case is almost standard. We are of the opinion that it was not improper or prejudicial for the court to instruct on them in this case.

The judgment is affirmed.

STEWART and MONTGOMERY, JJ., dissenting.